## SHIRLEY–SELF MOTOR CO. v. CANON.

No. 14435.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 23, 1942.

Bullington, Humphrey & Humphrey and Frank Ikard, all of Wichita Falls, for appellant.

Kilgore & Rogers, of Wichita Falls, and Montague & Fannin, of Fort Worth, for appellee.

SPEER, Justice.

Plaintiff Joe Canon sued M. D. Massey, Shirley-Self Motor Company, a corporation, J. C. Self, Emmett Rogers and Byron Tilton, to recover monies advanced and for the value of a secondhand automobile alleged to have been converted by the defendants, as a result of a deal between plaintiff and Massey for the purchase of a new Chrysler automobile from Massey as a local dealer, with knowledge that Massey could only furnish the new car through defendant Shirley-Self Motor Company, the wholesale distributors.

All defendants except Massey denied liability in any form, claiming that neither of them knew anything about the deal between plaintiff and Massey; that their connection with the transaction was solely with Massey, who apparently had regular title to the Oldsmobile; that they were not guilty of any fraud or conspiracy with Massey and that the subsequent sale of the car by them, or either of them, did not amount to a conversion for which they were liable because their possession was by due course of business with Massey, without knowledge of any wrongs by him and that they were innocent purchasers for value without notice.

The case was tried to the court without intervention of jury. Judgment was entered for plaintiff against Massey for $299, being the cash paid by plaintiff to him, and for $875, the value of the Oldsmobile, against both Massey and Shirley-Self Motor Company, jointly and severally. No judgment was allowed plaintiff against either J. C. Self, Emmett Rogers or Byron Tilton. From this judgment defendant Shirley-Self Motor Company has appealed.

First point presented by appellant Shirley-Self Motor Company is in substance that it had no dealings with plaintiff Canon, was in no way connected with the business conducted by Massey, was a wholesale distributor of Chrysler cars and refused to deliver the Canon car solely for the reason Massey had not paid for it and was insolvent. In this connection appellant contends that it dealt alone with Massey and could not deliver the Chrysler car to Massey until it was paid for, and he, having failed to pay and being insolvent, failure to deliver the car by it gave no right of action by Canon against it. It further earnestly insists that because of the above situation it is in no way responsible to plaintiff for any losses he may have sustained in dealing with Massey.

As we view this record, much more is involved than would appear from the point stated. There is no point made of the insufficiency of plaintiff's pleadings, to involve appellant in the conversion of plaintiff's car; nor in the allegations of failure of the consideration between Canon and Massey for the contract of purchase of the new Chrysler. The testimony is conflicting as to knowledge of appellant of the nature of that contract. The testimony shows conclusively that Massey was a dealer and could contract to sell Chrysler cars by placing orders through appellant, the wholesale dealer in that district; in such cases Massey became responsible to appellant for the purchase price; this is not denied by appellant. Also it is undisputed that at the times involved, J. C. Self was Vice President and General Manager of Shirley-Self Motor Company, and that defendants Tilton and Rogers were wholesale manager and used car manager, respectively, of the defendant corporation. There is a conflict in the testimony by which it was sought to connect appellant with the conversion of the Oldsmobile car involved. However, there is evidence of a substantial nature, which, if believed by the court, tended to bring notice home to appellant corporation of the whole deal. By that part of the evidence most favorable to plaintiff it appears that Canon approached Massey with a view to purchasing a Chrysler car by exchanging his secondhand Oldsmobile with a cash difference for the Chrysler. At their first conference Massey called Self, appellant's general manager, on the telephone and told him he was making such deal with Canon; that as was their custom Self asked Massey the kind of trade he was making, and that he told him the kind of car he was taking in, and "supposed" that he told Self with whom he was trading; witness said he told Self the kind of car he was taking in the exchange and that Self told him to go ahead, for he felt sure delivery of the Chrysler could be made within two or three weeks. Plaintiff then delivered his Oldsmobile to Massey on about March 24, 1941, in part payment for the new Chrysler car.

Massey was indebted to Shirley-Self Motor Company in the sum of $552, growing out of transactions had prior to the matters in controversy and had given his check to cover the item but the drawee bank had dishonored the check. Two or three days after March 24th, Self and Tilton, general manager and wholesale manager, respectively, of appellant at Wichita Falls, went to Bowie, where Massey had his agency, and told Massey that he must pay his $552 indebtedness at once. When Self and Tilton came to Bowie the Canon car was standing in front of Massey's place of business and he told them it was the Canon car he had taken in on the Chrysler car deal. Massey says he told them he could not pay the debt that day but would see what he could do the next day; that he could not raise the money, and drove the Canon car to Wichita Falls next day and told Self and Tilton that he had been unable to borrow the money on the car and that the Oldsmobile was all he had to offer as security for a loan. At that time Rogers, appellant's used car manager, said if Massey would transfer the car to him, he could borrow the money on it; Massey says he told Rogers that this was a car he had taken in on one to be delivered about June 1st. Massey then made the transfer of title of the Oldsmobile to Rogers, and Rogers and Self made a note to the Bank, secured it by a mortgage on the car, received $450 and applied it on Massey's old indebtedness; Massey said that Self told him to go ahead and sell the Oldsmobile; that he did not know if he told Self at that time that it was the Canon car, but that Self knew all about it any way. Rogers said he asked Self and Shirley if it was all right for him to take a transfer of the car from Massey and borrow the money and they advised him to do so. Thereafter, on April 5th, Massey and Canon went to appellant's place of business in Wichita Falls and Canon selected the type of Chrysler he wanted. Tilton filled out the order blank and Massey signed it and gave Tilton his signed blank check, ostensibly in payment for the Chrysler, and Tilton accepted it; the amount was not included in the check for it appeared they did not know exactly what it would be. At that same meeting Canan gave Massey his check for $299, the difference he and Massey had agreed upon between the value of the Oldsmobile and the Chrysler. Canon said he saw his car on the appellant's lot at the time but did not know it had been transferred by Massey to any one, nor that it had been mortgaged to the bank, that if he had known these things he would not have given his check to Massey. When the note at the bank matured Rogers asked Mr. Dannaher, who had succeeded Mr. Self in the management of appellant, if he must sell the Oldsmobile and pay the bank. Dannaher told him to sell it. Rogers sold it at wholesale price for about $100 more than enough to pay the bank, and turned the excess over to appellant Shirley-Self Motor Company, and the amount was applied on Massey's old debt to appellant. Massey could never pay to appellant the factory price on the Chrysler and appellant finally advised Canon that for this reason it could not deliver to him the car formerly ordered through Massey.

■ We have not attempted to give the versions of Self, Tilton and Rogers of what happened, and have not given all of the matters as related by Massey and Canon, but enough only to show that in our judgment, there was sufficient testimony to support the court's judgment, the effect of which was to hold Massey responsible to plaintiff for the $299 paid by Canon and for the value of plaintiff's Oldsmobile, and that appellant Shirley-Self Motor Company participated in the sale and conversion with knowledge that the car was the one received by Massey in part payment for the Chrysler car he had contracted to buy. It is also sufficient, if believed, to show that Rogers paid nothing for the car when he took it over from Massey and mortgaged it to the bank to procure money with which to pay Massey's pre-existing indebtedness to appellant.

■ As we view the instant case, there was a breach of the contract by Massey wherein he took the Oldsmobile in part payment of a new Chrysler. Plaintiff sought to rescind the contract with Massey because the consideration had wholly failed; such rescission would entitle plaintiff to recover what he had paid for the performance of the contract. 10 Tex.Jur. p. 114, sect. 65; 18 Tex.Jur. p. 494, sect. 18.

■ In 37 Tex.Jur. p. 639, sect. 292, the rule applicable here is announced as being that a seller (Canon) who has for just cause rescinded the sale of his property can recover it from the buyer and also from any other person who purchased it from the buyer who does not occupy the position of a bona fide purchaser for value and that one who thus takes the property for a pre-exist-

ing debt has no rights in the property as against the seller.

■ Second point raised by appellant for reversal is that Rogers was a bona fide purchaser from Massey and appellant was in no way responsible to Canon for the conversion and sale of the car under the circumstances involved.

The last-cited authority (37 Tex.Jur. p. 639) is applicable also to the second point raised. Since the publication of the above text, this court held in Anderson v. Hall, Tex.Civ.App., 137 S.W.2d 854, writ dismissed, that in circumstances closely akin to those here involved, plaintiff in that case had lost his car to defendants without having received anything in return for it; that the original purchaser transferred the car to another in payment of a pre-existing debt; that the latter parted with nothing when he took the car—he only credited the price on a debt of that seller; he did not thereby lose the debt sought to be discharged and was therefore not in law an innocent purchaser for value. We think it unnecessary to cite additional authorities to show such is the settled law of this state. Our conclusions reached in this case need not depend solely upon the fact that neither Rogers nor appellant paid anything for the Oldsmobile, but, as above indicated, appellant, acting through its several representatives, knew it was receiving the Canon car which was being held by Massey as part payment for the Chrysler to be delivered later.

Appellant must have known also that if it did not deliver to Canon the Chrysler car, Canon could and perhaps would rescind his deal with Massey and recover his Oldsmobile previously delivered in part payment for the Chrysler.

■ There are no separate findings of fact by the trial court and there are no findings in the judgment to indicate upon which theory of the case the court based his judgment. It is the settled rule in this state that judgment will be sustained by the appellate courts when correct for any reason, regardless of the ground upon which the trial court based it. General Bonding & Casualty Ins. Co. v. McCurdy, Tex.Civ.App., 183 S.W. 796, writ refused; Waco Development Co. v. McNeese, Tex.Civ.App., 209 S.W. 464, writ refused; Rio Bravo Oil Co. v. Staley Oil Co., 138 Tex. 198, 158 S.W.2d 293.

■ For the reasons set out, we conclude that there was sufficient evidence before the trial court to support the judgment entered. Much of the testimony, as above indicated, was strongly controverted, but in such circumstances the trial court's finding thereon is binding on us. Both points raised are overruled and the judgment is affirmed.