L. L. GUINN, SENIOR, v. J. A. LOKEY ET AL

No. A-3437. Decided May 28, 1952.
(249 S. W., 2d Series, 185.)

*Butler, Binion, Rice & Cook* and *R. H. Singleton,* all of Houston for petitioner.

The Court of Civil Appeals erred in holding that L. L. Guinn Sr., divested himself of all interest in the automobile by his sale thereof to L. W. Sneed, since such sale was induced by fraud on the part of L. W. Sneed and was promptly rescinded by plaintiff. Such error is an error of substantive law. Dudley v. Lovins, 310 Ky. 491, 220 S.W. 2d 978; Case Threshing Mach. Co. v. Street, 216 S.W. 426; 37 Texas Jur. 442.

*H A. Crawford* and *Guy Rall,* both of Houston, for respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

This case involves the construction of Article 1436-1, known as the Certificate of Title Act, Vernon's Annotated Criminal Statutes of Texas. L. L. Guinn, Sr., petitioner, filed this suit in the trial court, as plaintiff, against J. A. Lokey et al., defendants, for conversion of an automobile. The trial court, sitting without a jury, held that as a result of the transaction between the parties the title to the automobile claimed by petitioner had passed from him to J. A. Lokey. In affirming the judgment of

the trial court, the Court of Civil Appeals held that L. L. Guinn, Sr., having endorsed and delivered the certificate of title and the 1950 license receipt to L. W. Sneed, divested himself of all title to the automobile, and that such act estopped him from claiming title to the automobile against defendants. 243 S. W. 2d 246.

Petitioner contends that at the time of bringing this suit for conversion of the automobile he had sufficient interest in same upon which he could predicate a suit for recovery of the automobile. Petitioner's application for writ of error contains two points, which read as follows:

"FIRST POINT. The Court of Civil Appeals erred in holding that L. L. Guinn, Sr., petitioner herein, divested himself of all his interest in the automobile by his sale thereof to L. W. Sneed, since such sale was induced by the fraud of L. W. Sneed and was promptly rescinded by petitioner.

"SECOND POINT. The Court of Civil Appeals erred in holding that petitioner was estopped from claiming the automobile from respondent, Wally Mahan, since such respondent was not a bona fide purchaser from L. W. Sneed and had notice of the defects in the title of L. W. Sneed to the automobile."

1 The burden rested upon petitioner to establish in himself sufficient interest in the automobile at the time this suit was filed upon which a suit for conversion could be based. It is undisputed that petitioner received nothing for the sale of his automobile to Sneed.

Most of the essential facts regarding the questions presented here are set out in the trial court's findings of fact and conclusions of law, and the following excerpts are taken therefrom:

On May 15, 1950, L. L. Guinn, Sr., was the owner of and had full title to a 1949 model Oldsmobile '98' automobile. On May 16, L. L. Guinn, Sr., agreed to sell said automobile to one L. W. Sneed for $2500.00, of which amount the said L. W. Sneed agreed to pay $1500.00 in cash to L. L. Guinn, Sr, and agreed to pay the remaining $1000.00 by executing an unsecured note payable in the future. On the same day, May 16, 1950, the parties executed the appropriate title papers, with the assistance of an agent of the Sun Acceptance Corporation. After L. L. Guinn, Sr., and L. W. Sneed left the office of the Sun Acceptance Corporation they went to the apartment of L. L. Guinn,

Sr., who had other guests for lunch. Shortly before bank closing time L. W. Sneed requested L. L. Guinn, Sr., to go with him to the bank, but L. L. Guinn, Sr., advised L. W. Sneed that he could not leave his guests and that L. W. Sneed could take the car for the purpose of getting the $1500.00 in cash, which L. W. Sneed had agreed to pay L. L. Guinn, Sr., for the purchase of said car. L. W. Sneed drove the car off and did not return, and L. L. Guinn, Sr., never saw the car in question again until it came into the hands of Mr. and Mrs. J. A. Lokey.

It was found that when L. L. Guinn, Sr, executed the assignment of the certificate of title to L. W. Sneed he intended to convey the legal title to the car, and that L. W. Sneed, up to the time he got possession of the automobile, intended to pay L. L. Guinn, Sr., $1500.00, but after getting possession of the automobile on May 16, 1950, L. W. Sneed changed his mind and decided not to pay L. L. Guinn, Sr., anything; and that L. W. Sneed did not pay, nor has he ever paid, L. L. Guinn, Sr., any of the agreed purchase price of $2500.00 for said automobile.

It was further found that in the forenoon of May 17, 1950, L. L. Guinn, Sr., located L. W. Sneed by telephone, called the deal off, and demanded the immediate return of the automobile to him; but that in the afternoon of May 17, 1950, L. W. Sneed transferred his interest in the said automobile to Wally Mahan, who intended to comply with the articles of the Penal Code in effecting the transfer, and that Wally Mahan had no actual knowledge of the details of the transaction between L. L. Guinn, Sr., and L. W. Sneed, and paid $1500.00 to Sneed for the car. It was also found that at the time of such sale L. W. Sneed did not have or give Wally Mahan, dba Mahan Motor Company, a certificate of title to said automobile, issued by the State Highway Department of Texas in his, L. W. Sneed's name. Neither did L. W. Sneed on the occasion of said sale have or give Wally Mahan, dba Mahan Motor Company, a written acknowledgment from the Tax Assessor and Collector of Harris County, Texas, of having received L. W. Sneed's application for issuance of a certificate of title to said automobile in his own name, and that at no time did L. W. Sneed apply to said Tax Assessor and Collector for the issuance of a certificate of title to said automobile in his own name.

It was also found that on June 15, 1950, Wally Mahan sold his interest in said automobile to J. A. Lokey for $1995.00, plus transfer charges, and that Lokey had no actual knowledge of the previous dealings. But it was found that at the time of such

sale to J. A. Lokey, Wally Mahan, dba Mahan Motor Company, gave no documents or papers of any kind pertaining to the title of said automobile to J. A. Lokey, but immediately after such sale Wally Mahan took all title papers to the Tax Assessor and Collector of Harris County, Texas, for the convenience of J. A. Lokey and for the purpose of transferring title to said J. A. Lokey, and at such time said Tax Assessor and Collector issued a receipt for application for corrected title.

It was found that at the time of such sale to J. A. Lokey, Wally Mahan, dba Mahan Motor Company, filled out an application for corrected title to said automobile to be issued in his, Wally Mahan's, dba Mahan Motor Company, own name, and thereafter assigned such application to the name of J. A. Lokey by placing on the back of the application a stamp indicating that a transfer had occurred; and that immediately after such sale to J. A. Lokey, Wally Mahan, dba Mahan Motor Company, took to the Tax Assessor and Collector of Harris County, Texas, the following documents, in order to transfer title to said automobile to J. A. Lokey:

(1) The original certificate of title to said automobile, issued by the State Highway Department of Texas to L. L. Guinn, Sr., and assigned by L. L. Guinn, Sr., to L. W. Sneed, and thereafter assigned by L. W. Sneed to Wally Mahan, dba Mahan Motor Company, and thereafter assigned by Wally Mahan, dba Mahan Motor Company, to J. A. Lokey.

(2) The 1950 License Registration Receipt issued to L. L. Guinn, Sr.

(3) The Application for Corrected Title of L. W. Sneed, assigned by L. W. Sneed to Wally Mahan, dba Mahan Motor Company.

(4) The Application for Corrected Title of Wally Mahan, dba Mahan Motor Company, and assigned by Wally Mahan, dba Mahan Motor Company, to J. A. Lokey.

(5) The Application for Corrected Title of J. A. Lokey.

When petitioner, L. L. Guinn, Sr., learned, through the State Highway Department, that J. A. Lokey was in possession of the automobile, he instituted sequestration proceedings; after which Wally Mahan replevied.

If petitioner retained a sufficient interest or title in the automobile to maintain a suit for conversion thereof, he is entitled

to recover, unless his right is defeated on the ground that respondents were bona fide purchasers of the car for value. It is undisputed that petitioner received no consideration whatsoever for his automobile, and when he learned of the fraudulent acts of L. W. Sneed he promptly rescinded the contract and demanded possession of the automobile. If L. L. Guinn, Sr., had power to rescind, and exercised that power, then as between L. W. Sneed and L. L. Guinn, Sr., the legal title was reinvested in L. L. Guinn, Sr.

2  Let us first deal with the proposition that petitioner had the power to rescind the contract. The case of Raby et al. v. Sweetzer et al., 12 Texas Civ. App. 380, 34 S. W. 779, is a leading case upon this question. The opinion in that case was written by Justice Williams, then a member of the Court of Civil Appeals at Galveston, and who afterwards became an associate justice of the Supreme Court of Texas. It was said in that opinion: "The rule is uniformly recognized that a vendor who has been induced by fraud to part with his property must, if he would reclaim it upon discovery of the fraud, act with reasonable promptitude, and repudiate the contract. The sale, notwithstanding the fraud, stands until the vendor repudiates it, and hence affirmative action on his part is necessary in order to avoid it. If he does not elect to disaffirm, the sale remains good, the vendee retaining the property, and the vendor being entitled to the price; but, when he once makes his election, his act is irrevocable, and the status of the title to the property is fixed." Also see Shirley-Self Motor Co. v. Canon, Tex. Civ. App., 166 S. W. 2d 155; Radford v. Snyder National Farm Loan Assn., Tex. Civ. App., 121 S. W. 2d 478; Heinze v. Marx, 4 Texas Civ. App. 599, 23 S. W. 704, Error Refused; Hubb v. Marshall, Tex. Civ. App., 175 S. W. 716; Ava Hardware Co. v. Christensen, Mo. App., 122 S. W. 2d 92; 37 Tex. Jur., p. 638, §§ 291 and 292. We have concluded that on the facts presented in this record L. L. Guinn, Sr., had the power to rescind the sale to L. W. Sneed, and that L. L. Guinn, Sr., did rescind the sale in the forenoon of May 17, 1950, while title was still in L. L. Guinn, Sr.

3  The Second Point complains of the error of the Court of Civil Appeals in holding that L. L. Guinn, Sr., was estopped from claiming the automoile from Wally Mahan, since Wally Mahan was not a bona fide purchaser from value from L. W. Sneed, and had notice of the defects in the title of L. W. Sneed to the automobile. Article 1436-1 was enacted because of the complex situations arising since the growth of the automobile industry,

and to prevent fraud in the purchase and sale of motor vehicles. It deals with certificates of title to automobiles, and superseded the chattel mortgage registrations statutes as expressed in Articles 5490, 5497, and 5497-a, Vernon's Civil Statutes 1948, so far as they affected the registration of chattel mortgages on automobiles, and it also repealed the provisions of Articles 4000 and 5497 in so far as they pertained to motor vehicles. Bank of Atlanta v. Fretz et al., 148 Tex. 551, 226 S. W. 2d 848. The Article specifically provides that all sales made in violation thereof shall be void. See Texas Automotive Dealers Assn., Inc., v. Harris County Tax Assessor-Collector et al., 149 Texas 122, 229 S. W. 2d 787; Erwin v. Southwestern Investment Co., 147 Texas 260, 215 S. W. 2d 330; McKinney et al. v. Croan, 144 Texas 9, 188 S. W. 2d 144.

Sections 27, 33, 51, 52, and 53 of Article 1436-1 read as follows:

"Sec. 27. Before selling or disposing of any motor vehicle required to be registered or licensed in this State on any highway or public place within this State, except with dealer's metal or cardboard license number thereto attached as now provided by law, the owner shall make application to the designated agent in the county of his domicile upon form to be prescribed by the Department for a certificate of title for such motor vehicle."

"Sec. 33. Motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed."

"Sec. 51. It shall hereafter be unlawful for any person, either by himself or through any agent, to offer for sale or to sell or to offer as security for any obligation any motor vehicle registered or licensed in this State without then and there having in his possession the proper receipt or certificate or title covering the motor vehicle so offered."

"Sec. 52. It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the

proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be provided by the Department."

"Sec. 53. *All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with.*" (Emphasis ours.)

The findings of the trial court establish: (1) That at the time of the purported sale from L. W. Sneed to Wally Mahan, L. W. Sneed did not have or give Wally Mahan a certificate of title to the automobile, issued by the State Highway Department to him in his own name; (2) that L. W. Sneed did not have or give Wally Mahan a written acknowledgment from the Tax Assessor and Collector of Harris County, Texas, of having received L. W. Sneed's application for issuance of a certificate of title to said automobile in his own name; (3) that at no time did L. W. Sneed apply to the Tax Assessor and Collector of Harris County, Texas, for the issuance of a certificate of title to said automobile in his own name; and (4) that at the time of such sale to J. A. Lokey, Wally Mahan, dba Mahan Motor Company, gave no documents or papers of any kind pertaining to the title of said automobile to J. A. Lokey, but immediately after such sale Wally Mahan took all title papers to the Tax Assessor and Collector of Harris County, Texas, for the convenience of J. A. Lokey and for the purpose of transferring the title to said automobile to J. A. Lokey, and at such time the Tax Assessor and Collector of Harris County, Texas, issued a receipt for application for corrected title.

From the findings made, Wally Mahan did not comply with Sections 27, 33, 51, and 52 of Article 1436-1. Since Wally Mahan did not comply with the statute, he cannot be a bona fide purchaser, for he holds under an illegal contract of sale. J. A. Lokey was not a bona fide purchaser, because he also bought at a void sale. Section 51 required that Wally Mahan have "in his possession the proper receipt or certificate of title covering the motor vehicle so offered." Not having had this, the sale to J. A. Lokey was void under Section 53. Therefore the trial court and the Court of Civil Appeals erred in holding that petitioner in his dealing with L. W. Sneed divested himself of all interest in the automobile, and that petitioner was estopped from claiming the automobile from Wally Mahan, because Wally Mahan was not a bona fide purchaser for value and had notice of the defects in the title of L. W. Sneed to the automobile.

The judgments of the trial court and Court of Civil Appeals are reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Opinion delivered May 28, 1952.