Lloyd John VIATOR, Appellant,

v.

AMERICAN GENERAL INSURANCE COMPANY, Appellee.

No. 6872.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 26, 1967.

Rehearing Denied March 1, 1967.

---

**763**

———◆———

Oldham & Lorance, Houston, for appellant.

Vinson, Elkins, Weems & Searls, Houston, for appellee.

PARKER, Justice.

Lloyd John Viator, hereinafter called "Viator", sued American General Insurance Company for damages in the total sum of $57,500.00. While operating a truck, Viator was involved in an automobile accident resulting in severe injuries to Nelson J. Benoit and his wife, Dorothy Benoit, with the claim of the Benoits against Viator being settled by Viator for $50,000.00. Plaintiff Viator alleged that the truck was owned by one J. C. Martin, who had insurance covering bodily injury liability insurance limits of $50,000 for each person and $100,000 for each accident, with this policy having extended coverage to permissive users of the truck. Viator alleged that he was a permissive user of such truck and made demand upon American General Insurance Company under its policy issued

to Martin to furnish the protection defendant's policy obligated defendant to provide on Martin's vehicles. Defendant refused to defend Viator from the claims of the Benoits or to make any payments to the Benoits in satisfaction of their claim. Although not before the jury, the claim of the Benoits was paid by Northwestern Mutual Insurance Company which joined in this suit in its own right as one of the liability insurers of Viator and as subrogee of Viator's rights of recovery against American General Insurance Company. The $7,500 in excess of $50,000 was for expenses. Trial was to a jury and the court rendered judgment that plaintiff Viator (and Northwestern Mutual Insurance Company, his assignee) take nothing by reason of his suit against American General Insurance Company, sometimes called "defendant" herein.

This suit involved the question of who owned the truck involved in the collision with the Benoits. Viator contends the evidence conclusively established that the contract of sale between Viator and Martin was executory, and therefore ownership had not passed to Viator at the time of the accident in question and, accordingly, that Viator was covered under American General Insurance Company's policy issued to Martin. Viator also contended that the trial court erred in failing to enter judgment against American General Insurance Company because, as a matter of law, the evidence conclusively established that the contract between Viator and Martin for sale of the vehicle was in violation of the Texas Certificate of Title Act and consequently void, and that therefore title had not passed from Martin to Viator, and Viator was accordingly covered under American General Insurance Company's policy.

Martin was the owner of Gasoline Pump Service, Inc. He bought gasoline and other supplies from Viator. On December 28, 1961 Martin was the owner of the truck and owed $500 to Viator. Viator and Martin agreed that Viator would become the owner of the truck and in exchange Viator would

cancel the $500 indebtedness owed by Martin to him and give Martin a $300 trade credit with Viator's gas station. This credit was not to be used until after January 1, 1962, but was used and exhausted in three months thereafter. On December 28, 1961 Martin unloaded his tools and parts and other equipment that he had in this truck used by him in the business of Gasoline Pump Service, Inc., of which Martin was the president and the sole stockholder with authority to sell the truck, which had no outstanding lien against it. Possession of the truck on such date was taken by Viator and he drove it off. The truck was not taken on a trial basis, "the truck was his, then, as of that date", as far as Martin was concerned. His old bill was cancelled as of that date and he did not consider he retained any right to control the use of the truck. Viator needed no further permission to drive away with the truck since he was its owner. Prior to December 28, 1961 Martin had never allowed Viator to use the truck. Before Viator was involved in the accident with the Benoits, Martin had called his insurance agent, Sam Seragusa, and told him to cancel the insurance coverage on this truck, since he had sold it. American General Insurance Company had such coverage for Mr. Martin prior to the sale. It was agreed between Martin and Viator that the certificate of title would be transferred after the first of the year and Martin wouldn't use the $300 credit until later. The accident between Viator and the Benoits occurred on December 30, 1961, when Viator was driving this truck.

There was no lien upon the truck. As between the parties this sale of the truck of December 28, 1961 was legal. In answer to special issues the jury found that on December 28, 1961 when Viator drove the truck away from Martin's place of business that Martin and Viator had agreed that Viator was the present owner thereof; that Gasoline Pump Service, Inc. was not the owner of the truck on December 30, 1961.

On December 30, 1961 when Viator was involved in the automobile accident with the Benoits, which his insurance carrier, Northwestern Mutual Insurance Company settled for $50,000, Viator was the owner of the truck. Gasoline Pump Service, Inc. (Martin) then was not the sole owner as required by the policy of American General Insurance Company issued to Martin.

■ This court considers Rush v. Smitherman, 294 S.W.2d 873 (Tex.Civ.App.1956, err. ref'd) is contrary to the arguments asserted in the points of error of Viator. This was a case dealing with the doctrine of negligent entrustment in which that court held that since the defendant had already sold the car to the individual involved in the accident the question of whether he permitted him to use the car was not raised. The purchaser was not driving the vehicle by force or permission from the former owner. The court concluded in such opinion as follows:

"So, despite the failure to transfer the certificate and the Act's declaration that the non-transfer will render the sale void, as between the parties and when the purposes of the Act are not defeated, the sale is valid. Pioneer Mut. Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202; Knops v. Ordorica, Tex.Civ.App., 242 S.W.2d 454; Manning v. Miller, Tex.Civ.App., 206 S.W.2d 165. The failure to deliver the certificate does not destroy one's rights and ownership in a vehicle in many other situations. See Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185; Pacific Finance Corp. v. Crouch, Tex.Civ.App., 243 S.W.2d 432; Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W.2d 938."

\* \* \* \* \* \*

"We conclude that the seller delivered the control and possession of the vehicle to Munoz, and accepted part payment on the agreed purchase price. The seller retained the naked legal title so long as

the certificate was not transferred. * * * As between seller and purchaser, when the accident occurred, the Seller had no right to possess or control the car."

 The legislative intent of the Certificate of Title Act is correctly stated in Hicksbaugh Lumber Company v. Fidelity & Casualty Company of New York, 177 S.W.2d 802 (Tex.Civ.App.1944, n. w. h.):

"The legislative intent, as disclosed in Section 1 of the Certificate of Title Act, was to lessen and prevent theft and traffic in stolen motor vehicles (Motor Investment Company et al. v. Knox City, 141 Tex. 530, 174 S.W.2d 482, 483), and not to prevent sales and transfers of interest in motor vehicles. The Act does not prohibit or provide penalties for persons who have transferred interest in motor vehicles without compliance with the provisions thereof."

Judgment of the trial court is affirmed.