**ANCHOR MORTGAGE SERVICES, INC., Appellant,**

v.

**Denise POOLE and Kenneth Poole, Appellee.**

No. 2-86-096-CV.

Court of Appeals of Texas, Fort Worth.

Sept. 24, 1987.

Shannon, Gracey, Ratliff & Miller, and Tim G. Sralla, Fort Worth, for appellant.

Robert J. Wilson & Associates, Inc., and Robert J. Wilson, Burleson, for appellee.

Before HILL, LATTIMORE and FARRIS, JJ.

## OPINION

HILL, Justice.

Anchor Mortgage Services, Inc., a mortgagee, appeals from a judgment awarding damages to Denise and Kenneth Poole, its mortgagors, following a trial by jury. The Pooles alleged that Anchor kept the fire insurance proceeds following a fire at their home, that Anchor converted the funds to its own use, and that it breached a fiduciary duty as between itself and the Pooles. Anchor presents eleven points of error.

We reverse and render judgment that the Pooles take nothing by their suit, because we find that there is no evidence of any conversion or actual damages.

In point of error number one, Anchor urges that the trial court erred in rendering judgment for the Pooles because there was no evidence that Anchor wrongfully converted the check in question.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex. 1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

■ A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

■ Conversion is the unauthorized and wrongful exercise of dominion and control over another's personal property, to the exclusion of or inconsistent with the rights of the owner. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex. 1971). It is essential that the plaintiff establish some interest in the property as of the time of the alleged conversion such as title or otherwise some right to possession. *Guinn v. Lokey,* 151 Tex. 260, 249 S.W.2d 185, 186 (1952).

■ The facts are basically undisputed. In connection with the purchase of their residence, the Pooles executed a mortgage and deed of trust in August, 1981, in favor of Suburban Coastal Corporation, a corporation later merged into Anchor. The pertinent portion of the deed of trust is as follows:

6. That they will keep the improvements now existing or hereafter erected on the said premises, insured as may be required from time to time by the holder of the note against loss by fire and other hazards, casualties, and contingencies in such amounts and for such periods as may be required by the holder of the note and will pay promptly, when due, any premiums on such insurance provision for payment of which has not been made hereinbefore. All insurance shall be carried in companies approved by the holder of the note and the policies and renewals thereof shall be held by the holder of the note and have attached thereto loss payable clauses in favor of and in form acceptable to the holder of the note. *In event of loss they will give immediate notice by mail to the holder of the note, who may make proof of loss if not made promptly by the party of the first part, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the holder of the note instead of to the party of the first part and the holder of the note jointly, and the insurance proceeds, or any part thereof, may be applied by the holder of the note at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In event of foreclosure of this Deed of Trust or other transfer of title to the said premises in extinguishment of the indebtedness secured hereby, all right, title, and interest of the party of the first part, in and to any insurance policies then in force shall pass to the purchaser or grantee.* [Emphasis added.]

The Pooles suffered a significant fire loss to their residence on July 21, 1983. They received an insurance check in payment of the loss in the amount of $15,-476.27. The check was made payable to the Pooles and to Suburban Coastal. Ken-

neth Poole testified that a mortgage company employee named Patty told him to endorse the check, to have his wife endorse the check, and send it to the company. He said that Patty told him that they would have a draft for approximately one-third of the proceeds within seven to ten days so that they could hire someone to take care of the repairing of the home. He testified that he and his wife followed Patty's instructions but never received any money. He related that thereafter he would call back every four to six weeks to ask about his money. He asserted that each time he would call, the person he talked to would not know anything about it, that they would promise to check on it and contact him later, but would never do so. He said no one ever told him why he was not getting the money, that all he received were late notices and foreclosure notices.

Joseph Herzer, the office manager of Anchor's real estate division, testified that the Pooles suffered a fire loss to the mortgaged property on July 21, 1983. He acknowledged receipt by Suburban Coastal of a check for the fire insurance proceeds in the amount of $15,476.27, payable jointly to the Pooles and Suburban Coastal. He said that the check had already been endorsed by the Pooles when received by Suburban Coastal. Herzer testified that the draft was placed into a loss draft account—a non-interest bearing account into which the company deposited insurance proceeds—by Anchor, which was still operating under the name of Suburban Coastal at the time of the deposit. Mr. Herzer explained that Anchor never forwarded any of the money to the Pooles because he never received any copy of a signed contract or other confirmation that repair work had begun. He said that Anchor had selected its option of using the check for the purpose of making the repairs.

Mr. Poole testified that some repairs were made, but that he had to stop the work because he could not afford to pay for it without the insurance money. He did not dispute the fact that he did not ask for the money to be paid to any contractor or the fact that he did not furnish Anchor with a copy of any contract he made to have the house repaired. He said that he could not afford to make the payments to the house when he was not able to live there.

Mr. Herzer testified that after proper notice, Anchor foreclosed on the house. Anchor bought the house on foreclosure, apparently bidding the amount owed by the Pooles to them. Mr. Herzer related that since the loss was guaranteed by H.U.D., Anchor made a claim to H.U.D. in connection with the foreclosure. The house was conveyed to H.U.D. H.U.D. paid Anchor the full amount of its guaranty, less the amount of the insurance proceeds in question.

Mr. Poole, in his testimony, stated that he did not dispute Anchor's claim that the purchaser of the house would also acquire the fire insurance proceeds.

Although the evidence reflects that Mr. Poole had difficulty in dealing with Anchor with respect to the funds in question, the record shows that Anchor's disposition of the funds was at all times consistent with the terms of the deed of trust. Prior to the foreclosure, Anchor was holding the funds for the mutual benefit of Anchor and the Pooles, to be paid for the restoration of the Poole residence. When the residence was not repaired and the Pooles did not make their monthly payments, the residence was foreclosed. Anchor contends, and Mr. Poole at trial testified, that he did not dispute the fact that upon foreclosure the interest in the insurance proceeds passed to the purchaser, which in this case was Anchor and, ultimately, H.U.D.

Since Anchor's dealing with the proceeds in question was in accordance with the provisions of the deed of trust, it did not engage in an unauthorized and wrongful exercise of dominion over the property inconsistent with any right the Pooles may have had in the proceeds. We sustain point of error number one.

■ In point of error number five, Anchor contends that the trial court erred in rendering judgment for the Pooles because there was no evidence of any actual damages.

Under the peculiar facts of this case, if the Pooles are entitled to any relief at all, it would be as a result of Anchor's breach of its agreement to disburse a portion of the funds to get the work started. The loss suffered by the Pooles, if any, is not the amount of the proceeds, the amount awarded by the trial court. As we have previously noted, those funds have been dealt with in accordance with the deed of trust. The Pooles have suffered the loss of the funds, but they have also been relieved of the obligation of making the repairs. If the Pooles have lost anything, it is whatever equity they might have had in the residence at the time of the foreclosure. The record is completely devoid of any evidence whatever as to whether or not the Pooles had any equity in the residence at the time of foreclosure. Since there was no evidence which would establish that the Pooles suffered an actual monetary loss as a result of Anchor's breach, we sustain point of error number five.

In view of our holding with respect to points of error numbers one and five, we need not consider the remaining points of error.

We reverse and render judgment that Denise and Kenneth Poole take nothing by their suit.

FARRIS, J., dissents.

FARRIS, Justice, dissenting.

I respectfully dissent because the record establishes appellant breached its contract to the appellees' damage, but I would reverse and remand the case for new trial because the evidence is insufficient to sustain the amount of damages awarded appellees.

In their cross-action against appellant, appellees allege they mailed the insurance proceeds check to appellant with the understanding that appellant would disburse the funds to the contractor employed to repair appellees' residence, as the repairs were completed. Appellees allege that appellant never paid the contractor, did not credit them with the insurance payment, and foreclosed on appellees' premises divesting them of their right, title and interest in both their home and their $15,700.00. Although in their prayer for relief against appellant, appellees pray for recovery of the $15,700.00 which appellant "converted to their own use and benefit," appellees' cause of action is in the nature of an action on a contract rather than a suit for conversion. Appellant's only special exception was to appellees' allegations of prejudgment interest and attorneys' fees.

Appellant requested no special issues, instructions, or definitions, and did not object to the court's charge. The trial court submitted two issues to the jury:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Defendant deposited the insurance proceeds check in question into a special account intended to be used to pay for repairs to Plaintiff's home?

Answer: "We do" or "We do not."

ANSWER: WE DO

SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that Defendant converted the insurance funds to its own use and benefit?

Answer: "We do" or "We do not."

ANSWER: WE DO

In the absence of any requests or objections, omitted issues will be deemed found by the trial court to support the judgment, if one or more issues necessary to sustain it are submitted. *See Turner, Collie & Braden v. Brookhollow, Inc.,* 642 S.W.2d 160, 165 (Tex.1982). The court's charge is sufficient to submit the issue of appellants breach of its contract with appellees. As the majority opinion notes, the deed of trust provides that appellant may, *at its option,* either apply the insurance proceeds to the reduction of appellees' debt or to the restoration or repair of the damaged property. Appellant neither pled nor proved an exercise of its option, and the evidence shows that in fact appellant did not exercise the option but rather mismanaged the entire affair, to the injury of appellees.

With regard to the deemed finding on the omitted issue of damages, I disagree with the majority's finding that there is no evi-

dence of any actual damages. The applicable test is whether the evidence of damages creates more than a mere surmise or suspicion of its existence. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361, 363 (1960).

I would sustain appellant's sixth point of error and reverse and remand for new trial because there was insufficient evidence of actual damages.

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

The evidence is uncontroverted that the appellees received the insurance check following the fire damage to their residence, endorsed the check, and mailed it to the mortgage company. Mr. Poole testified of several telephone conversations with various employees of appellant who assured him that he would shortly receive a draft for approximately one-third of the insurance proceeds in order to begin repairs on his residence, with the remaining two-thirds to be forwarded in two supplemental payments. The appellant never forwarded any of the promised drafts to appellees. Appellees were unable to make the repairs to their home, and were unwilling and unable to continue payments on a residence which they could not occupy. As a consequence of appellees' non-payment, appellant foreclosed on appellees' residence, bidding the property in at $39,118.00, of which $30,396.74 represented the unpaid balance on the note held by appellant.

An injured party is not to be denied a recovery because the exact amount of his damages is undeterminable if he has produced the best evidence available to him and it is sufficient to afford a reasonable basis for determining his loss. *Vance v. My Apartment Steak House, Etc.*, 677 S.W.2d 480, 484 (Tex.1984); *Hindman v.*

*Texas Lime Company*, 157 Tex. 592, 305 S.W.2d 947 (1957).

The outline of the appellees' damage, outlined above, creates more than a mere surmise or suspicion of the existence of damages; however, applying the *Garza v. Alviar* test, I would hold that the evidence does not afford a reasonable basis for determining appellee's loss and is so weak that the finding of damages should be set aside and a new trial ordered.