William J. RICE, Appellant,

v.

Charles E. GREGORY, Appellee.

No. 9679.

Court of Appeals of Texas,
Texarkana.

Aug. 8, 1989.

Rehearing Denied Oct. 17, 1989.

Karl E. Kraft, Spring, for appellant.

C. Thomas Behrman, Houston, for appellee.

GRANT, Justice.

William J. Rice appeals an adverse judgment awarding Charles E. Gregory $76,232 in damages against Rice for conversion, prejudgment interest in the amount of $69,-162, exemplary damages in the amount of $75,000 and attorney's fees in the amount of $45,000, for a total of $265,394.

This case was first tried in November, 1982, and the cause was reversed and remanded in 1984. *Gregory v. Rice*, 678 S.W.2d 603 (Tex.App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.). The second trial of this case was concluded in April, 1988. Gregory obtained favorable jury findings on theories of conversion and tortious interference with inheritance rights. Gregory elected to recover damages on the finding of conversion. Because of this election, we do not address Rice's points of error relating to tortious interference.

The trial court granted a declaratory judgment construing Charlotte Gregory's will as having created a life estate in the stock described below with Charles Gregory as a remainderman. Rice sought to claim full ownership of the stock for his

wife's estate based upon an alleged oral disclaimer agreement. The jury found that there was no oral agreement, and the trial court found that Gregory was entitled to the stock and awarded him damages for conversion.

Charlotte I. Gregory, the wife of Charles E. Gregory, died on February 13, 1969, leaving a will disposing of corporate stock in the approximate value of $278,000. Her will provides that the stock is to be divided among her three children, Charles E. Gregory (the appellee), Virginia Gregory Jenkins, and Elizabeth Gregory Rice in equal shares, providing however, that Elizabeth Rice was limited to a life estate with remainder interest vesting in Virginia Gregory Jenkins and Charles Gregory in equal shares. Elizabeth Rice died eleven years later on July 5, 1980, leaving a will which purported to bequeath the bulk of the corporate stock (in which she received a life estate from her mother's estate) to her sister, Virginia Gregory Jenkins. Rice, as the executor of the estate of Elizabeth Rice distributed most of the stock according to her will, but he also distributed a part to Gregory's two daughters, Carolyn Gregory Sonleitner and Virginia Gregory Waddell. Gregory filed suit against Rice for conversion of the stock which Gregory's mother had willed him a remainder interest after Elizabeth Gregory Rice's life estate.

In his points of error, Rice urges that the trial court erred in rendering judgment for the appellee because there was no evidence to support the jury's finding that he, both individually and as independent executor, converted Gregory's remainder interest in the stock and alternatively because the finding that he converted Gregory's property interest was against the great weight and preponderance of the evidence; because there were no findings as to the dates of the alleged conversion; because there were no jury findings as to the capacity in which he was acting at the time of the alleged conversion; because the Uniform Declaratory Judgments Act is not applicable to this cause; because the cause was improperly influenced by frivolous positions and statements made by appellee's counsel; because he was denied reasonable examination of appellee as an adverse witness concerning appellee's work papers related to the stock in question; because there was no or insufficient evidence to support the finding that his acts in converting the stock were willfully wrongful; because the exemplary damage award against appellant was excessive; because certain issues submitted to the jury constituted a comment on the weight of the evidence; and because the jury's answers to the special questions were the result of passion, bias or prejudice against the appellant.

We first address his contentions that there was no evidence to support the jury's finding that he, individually and as independent executor of the estate of his deceased wife, Elizabeth Gregory Rice, made a conversion of property belonging to Charles Gregory. Rice also contends that the jury's finding was so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. Because Rice did not have the burden of proof as to this special issue, we will treat this point as an insufficient evidence contention.

In reviewing a no evidence point, we consider only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981). If there is more than a scintilla of probative evidence to support the disputed finding, the point of error must be overruled. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). An insufficient evidence point requires us to consider and weigh all of the evidence relevant to the finding being challenged. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Conversion is the unauthorized and wrongful exercise of dominion and control of another's personal property, to the exclusion of or inconsistent with the rights of the owner. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971); *Anchor Mortgage Services, Inc. v. Poole*, 738 S.W.2d 68 (Tex.App.–Fort Worth 1987, writ

denied). The burden in the instant case was upon appellee Charles Gregory to establish in himself sufficient interest in the corporate stock, as of the time this suit was filed. *Guinn v. Lokey*, 151 Tex. 260, 249 S.W.2d 185, 187 (1952).

Rice concedes that under the terms of Charlotte Gregory's will, Elizabeth received only a life estate to the income from her share, and that the remainder was then to go to Charles and Virginia. However, he testified that, before Elizabeth died, she told him that there was an oral agreement between her, Charles and Virginia to ignore the will provision for a life estate and to treat Elizabeth's inheritance in the stock as a full one-third share. Gregory testified that no such agreement was made, and Virginia testified by deposition somewhat reluctantly that she could not remember an oral agreement having been made. The fact that Elizabeth included this stock in her will could be interpreted as some indication that Elizabeth believed that she owned more than life estate in this stock, and her gift of 150 shares during her lifetime to her sister without limiting the gift to her life estate ownership also gives rise to an inference that she believed that she owned more than a life estate in the stock.

Rice testified that work papers prepared by Charles Gregory, which included evaluations for inheritance tax purposes, indicated that Gregory was treating Elizabeth's share as equal to the other two shares. He further argues that the stocks inherited by Elizabeth had her name imprinted on them and that this was evidence of full ownership by Elizabeth. Other witnesses, however, testified that a name on the certificate was not conclusive of ownership, but rather reveals to the corporation the name of the person who is to receive dividends and further reveals to the transfer agent the person who may transfer the stock. The trial court instructed the jury that the name on a stock certificate is not conclusive of ownership.

■ The foregoing indicates some circumstantial evidence from which the jury could have drawn an inference that there was an agreement among the brothers and sisters for Elizabeth to have a full one-third share of the stock and not just a life estate; however, the jury failed to find that there was such an agreement. The jury was not compelled to find that the agreement existed, and the sufficiency of the evidence on this jury finding is unchallenged.

Charles Gregory made a demand on Rice for his portion of the remainder interest on several occasions after the terms of Elizabeth's will became known to him. These demands were refused or ignored by Rice. Rice transferred various shares of the stock in question to Virginia, to himself, and to his children by a former marriage, all pursuant to the purported bequest by Elizabeth in her will. He also transferred some of the stock to two daughters of Charles Gregory, and sold some and placed the proceeds in his personal bank account, along with dividends from the stock.

■ We conclude that there was more than a scintilla of probative evidence to support the jury finding that William Rice, individually and as independent executor of the estate of his wife, Elizabeth, made a conversion of property belonging to Charles Gregory. Considering all of the evidence relevant to the finding being challenged, we further conclude that the evidence was sufficient to support the jury's finding that Rice, individually and as independent executor of Elizabeth's estate, made a conversion of property belonging to Charles Gregory. Accordingly, Rice's contentions to the contrary are overruled.

Next, Rice argues that the court erred in rendering judgment against him as independent executor of Elizabeth's estate because the estate was fully administered before this suit was filed and that he, as independent executor, was at all material times a mere nominal party against whom no judgment could be rendered which would affect him in such capacity. He argues that because he paid all debts of his wife's estate and made final distribution of the estate assets on or before August 19, 1981, he was a mere nominal party to this suit which was filed on December 23, 1981, and was thus not liable.

■ There is no evidence in the record to show that the estate was closed pursuant to Section 151 or Section 152 of the Texas Probate Code or otherwise; therefore, Rice was properly made a party in his capacity as executor of the estate. Moreover, closing of an estate does not relieve the executor from individual liability for mismanaging the estate. *Interfirst Bank–Houston v. Quintana Petroleum,* 699 S.W.2d 864 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); Tex.Prob.Code Ann. § 151 (Vernon 1980).

■ Rice also contends that the award of prejudgment interest from a single specific date without a jury finding of dates of the conversions from which to compute such interest was error. Rice contends that the specific dates of conversion are essential in conversion cases to permit the application of the proper measure of damages and the calculation of prejudgment interest. We disagree. Where conversion is attended with a willful wrong, and the property converted is of changing or fluctuating value, the measure of damages is the highest market value of such property between the date of conversion and the filing of suit. *DeShazo v. Wool Growers Central Storage Co.,* 139 Tex. 143, 162 S.W.2d 401, 404 (1942). In the instant case, the jury found that Rice's acts in conversion of the property were willfully wrongful.

There was testimony that the value of the converted stock fluctuated daily and of its highest market value between the selected date of conversion of May 7, 1981, and the filing of the lawsuit on December 21, 1981. The court properly awarded prejudgment interest for the period beginning six months after the selected conversion date and ending on the date of judgment. Such prejudgment interest is authorized. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985).

It is true that some of the transfers of the stock by Rice occurred after the date of conversion selected by the trial court (May 7, 1981), but there were other acts of conversion that occurred prior to that date. On March 2, 1981, Rice filed an inventory and appraisement for the estate of Eliza- beth Gregory Rice which included all of the stock involved. On April 23, 1981, Rice's attorney notified Gregory of Rice's intent to claim full ownership of the stock for the estate of Elizabeth Gregory Rice. These acts are sufficient to establish conversion by Rice. We overrule Rice's points of error related to this measure of damages.

Next, Rice contends that there was no evidence to support submission of a question to the jury asking whether his acts in converting property of Charles Gregory were willfully wrongful and that the jury's answer to the question was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Because Rice did not have the burden of proof on this question, we deem his latter contention to be an insufficient evidence point.

There is evidence in the record that Rice deposited dividends and proceeds from sale of some of the disputed stock into his personal bank account and that he transferred title in some of the stock to persons who were not named in Elizabeth's will. The record further shows that he ignored Gregory's demands that the stock be turned over to him pursuant to his rights as a remainderman under the terms of Charlotte Gregory's will. He did not tender the stock or the income therefrom into the registry of the probate court nor did he make an application to that court to determine the rights of claimant Charles Gregory in the stock. The jury found that there was no agreement by the devisees to alter the terms of Charlotte Gregory's will.

■ There was evidence that Rice's acts were willfully wrongful. Furthermore, considering and weighing all of the evidence, there was sufficient evidence to support the jury's finding that Rice's acts were willfully wrongful.

Rice next contends that the court erred in rendering judgment jointly against him individually and as independent executor of Elizabeth's estate. He contends that there were no jury findings as to the capacity in which he was acting at the time of the conversions and that the judgment, there-

fore, is contrary to Rules 300 and 301 of the Texas Rules of Civil Procedure.

■ Contrary to Rice's contention, the jury's answers to the eleven special questions related to conversion and damages arising from the conversion included language that Rice acted individually and as independent executor of his wife's estate. An estate is ordinarily not liable for the torts of a personal representative, but an estate may be held liable jointly with the representative for the act of conversion in taking possession of property belonging to a third person. *Neyland v. Brammer*, 73 S.W.2d 884 (Tex.Civ.App.–Galveston 1933, writ dism'd). The joint liability is especially applicable in the present case because Elizabeth Rice's will purported to bequeath the stock in spite of the fact that she only owned a life estate in the stock. The trial court did not err in rendering judgment against Rice individually and as independent executor of Elizabeth Rice's estate.

Next, Rice argues that the trial court erred in rendering judgment for Gregory pursuant to the Uniform Declaratory Judgments Act (Tex.Civ.Prac. & Rem.Code Ann. § 37.001 et seq. (Vernon 1986 & Supp. 1989)) in that Gregory's suit is not within the purview of that statute because of a lack of a justiciable controversy and because the case is an action for conversion requiring merely the determination of fact issues.

Section 37.005 of the Texas Civil Practice & Remedies Code provides that a person who is interested as or through an executor may have a declaration of rights or legal relations in respect to an estate to determine any question arising in the administration of the estate. This provision covers the dispute in the present case.

Rice argues that the relief sought by Gregory is the construction of Charlotte's will with regard to the interest bequeathed to Elizabeth. He maintains that this issue was waived by his judicial admission in his pleadings.

■ Several years after this controversy arose and after this case had been tried to a jury once, Rice made a statement in his fourth and fifth amended answers that Charlotte's intent in her will was to provide a life estate to Elizabeth with remainder interest to be divided equally between Charles Gregory and Virginia Gregory Jennings. This statement could be construed as being equivocal because it only states what Charlotte's intent was and does not go on to admit that this was the legal effect of the will. We find that there was a sufficient justiciable controversy to allow relief under the Uniform Declaratory Judgments Act.

Rice further argues that Gregory is not entitled to recover attorney's fees because the claim is not within one of the eight classifications set forth in Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986) (formerly Article 2226, Vernon's Annotated Civil Statutes). However, such fees are specifically authorized in declaratory judgment actions by § 37.009 of the Code.

■ Finally, Rice contends that this is a suit for conversion, and that attorney's fees are not awarded in such suits. Rice did not object to Gregory's testimony regarding attorney's fees except on the grounds that it stated the actual charge made by Gregory for his services rather than the "usual and customary fee" for such services. Rice is correct that Gregory should have broken down his time and fees which were attributable to the suit for conversion as opposed to those that were attributable to the declaratory judgment. *Transcontinental Gas v. American National Petroleum Co.*, 763 S.W.2d 809, 822 (Tex.App.–Texarkana 1988, no writ). However, Rice did not object to the testimony in regard to the attorney's fees, and he did not object to the submission to the jury, which did not limit the jury to attorney's fees attributable to the declaratory judgment action. Therefore, no error has been preserved on that issue. Tex.R.App.P. 52(a).

Next, Rice argues that the jury's verdict was improperly influenced by the frivolous position of Gregory's counsel as evidenced by erroneous statements of fact and of law made during the trial and in final argument, contrary to Ethical Consideration 7–4

of the Texas Code of Professional Responsibility.

In relevant part, EC 7–4 provides that an advocate may urge any permissible construction of law favorable to his client so long as the position taken is supported by the law or is supportable by good faith argument for an extension, modification, or reversal of the law; however, a lawyer is not justified in asserting a position in litigation that is frivolous.

■ Rice quotes in his brief various statements purportedly made by counsel for Gregory during final argument. Rice did not object to the statements at trial, nor did he ask the court to direct the jury to disregard the disputed statements. He offers no authority in support of his contention that a violation of an ethical consideration is a ground for reversal of a trial court's judgment. By failing to object at trial, Rice has waived any error as to the disputed language. We have, however, examined the language to which he objects in his brief and conclude that it was not frivolous.

Next, Rice argues that Gregory's counsel made an incurable objection and comment in the presence and hearing of the jury regarding an unrecorded comment by Rice to his counsel. He further argues that the court's instruction to Rice's counsel in the presence and hearing of the jury caused the rendition of an improper judgment. He contends that the court should have determined whether the comment had been heard by the jury before giving such an instruction.

The subject incident occurred during redirect examination by Rice's counsel of a witness. Upon conclusion of the examination, the record reflects the following:

MR. KRAFT [Rice's counsel]: Pass the witness.

MR. BEHRMAN [Gregory's counsel]: Pass the witness, Your Honor.

THE COURT: You can step down, ma'am. Any objection to this witness being excused?

MR. BEHRMAN: No.

(Whereupon instructions are given to the witness by the court).

MR. BEHRMAN: I am going to object for about the fourth time of the defendant in this case making sidebar remarks like he just did in front of the jury. He made the statement, "Bring her this way. They're going to trip her." Judge, this has to stop.

THE COURT: Mr. Kraft, you will need to consult with your client. I would ask you to do this now.

MR. BEHRMAN: Judge, this man shows contempt of this Court. Contempt of the orders of this Court.

THE COURT: That's enough, Counsel.

MR. KRAFT: Your Honor, for Mr. Rice, and certainly for myself, we apologize.

THE COURT: Call your next witness.

■ The record shows that Rice did not object to these remarks by Mr. Behrman at trial and did not ask the court to instruct the jury to disregard any prejudicial remarks. The record further shows that Rice's counsel apologized to the court for the remarks. From that apology, we can infer that the remarks were in fact made by Rice. Under such circumstances, the objection made by Gregory's counsel was invited and was a reasonable response to the remarks made. We conclude that Rice's counsel waived error, if any, with regard to Rice's remarks by his failure to object during the trial.

■ Next, Rice urges that incurably harmful statements were made by the court to Gregory's counsel in the presence and hearing of the jury during examination of Gregory as an adverse witness. He argues that such statements were comments on the evidence (work papers of Gregory and other documents related to the division by Charlotte Gregory of her assets among her children upon her death) and in effect, informed the jury that little, if any, weight should be given to the work papers, thereby causing rendition of an improper judgment. Rice did not object to the allegedly harmful statements at trial, and he has therefore waived error, if any, as to the statements.

Rice further complains that the court denied his counsel the right of reasonable examination of Gregory as an adverse witness concerning the work papers pertaining to Charlotte's estate and other documentary evidence allegedly indicating an equal division of the estate among her three children.

■ The record shows that Rice's counsel attempted to examine Gregory as to Rice's contention that there had been an equal division of Charlotte's estate and that various acts and work papers of Gregory corroborated that contention. The trial court sustained Gregory's objection that the attempted examination was repetitious. The record shows that Rice had been permitted to make the same point previously in the case, and therefore the trial court correctly sustained the objection.

Finally, Rice contends that the jury's answers to the special questions were the result of passion, bias, or prejudice against him. He cites no basis in fact or law to support his contention and we find none in the record. The point is overruled.

The judgment of the trial court is affirmed.