**APECO CORPORATION, Appellant,**

v.

**BISHOP MOBILE HOMES, INC., et al.,
Appellees.**

No. 826.

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 28, 1974.

Rehearing Denied March 21, 1974.

Wm. R. Anderson, Sorrell, Anderson & Sorrell, Corpus Christi, for appellant.

Nelson Sharpe, Glusing & Sharpe, Kingsville, for appellees.

## OPINION

BISSETT, Justice.

This is primarily a suit for possession of and title to a mobile home. Involved are constructions of Article 1436–1, Vernon's Annotated Penal Code, commonly called the "Certificate of Title Act",[1] and of certain sections of the Texas Business and Commerce Code. The validity of the sale of a mobile home by a dealer to a purchaser is questioned by the manufacturer.

Apeco Corporation (Apeco) the parent corporation of Craftmade Homes, a corporation that manufactured the mobile home in question, sued Sterling Mohr (Mohr), the purchaser of the mobile home, and Bishop Mobile Homes, Inc. (Bishop), the dealer that sold the mobile home to Mohr, to determine the title and ownership of the mobile home and the right of possession to it, and, alternatively, to recover from the defendants the amount of money for

---

1. Upon enacting the new Texas Penal Code, approved June 14, 1973, the 63rd Legislature transferred the "Certificate of Title Act" out of Article 1436–1, V.A.P.C., and into Article 6687–1, Vernon's Ann.Civ.St.

which it sold the same to the dealer. Following a trial before the court, judgment was rendered in favor of Mohr for possession and ownership of and title to the mobile home; Apeco was ordered to issue its manufacturer's certificate to Mohr; and Apeco was given judgment against Bishop for the sum of $7,225.80. Apeco has appealed. We affirm.

In the main, three questions are presented for determination. First, is the purchase of a new, unregistered mobile home from a dealer, where the manufacturer had not executed and delivered a manufacturer's certificate properly filled in on the mobile home at the time of purchase, controlled by the Certificate of Title Act or by the Texas Business and Commerce Code? Second, if the sale is controlled by the Code, is the purchaser a buyer in the ordinary course of business within the purview of Sections 2.401 and 2.403 of the Texas Business and Commerce Code, V.T. C.A.? Third, if the sale is controlled by the Code, is the manufacturer estopped to assert that the dealer was not its authorized agent with power to sell and transfer title to the mobile home under the circumstances?

Findings of fact and conclusions of law were filed. Apeco agrees that the findings of fact are correct. Apeco, through Craftmade Homes, its subsidiary, manufactured a new mobile home, and sold and shipped it to Bishop. The purchase price was $7,225.80 cash, to be paid upon delivery. The mobile home was delivered to Bishop on June 28, 1972. Bishop did not pay Apeco ($7,225.80) when the mobile home was delivered to it, but Apeco permitted the same to remain in Bishop's possession. Apeco did not execute and deliver the manufacturer's certificate on the mobile home at the time of such delivery, but retained it in its possession, and refused to thereafter execute and deliver the same to either Mohr or Bishop.

Mohr entered into a purchase and sales contract with Bishop on July 3, 1972, whereby he agreed to purchase the mobile home for $9,299.60, which included registration and certificate of title fees in the amount of $85.20. He paid $4,600.00 in cash to Bishop upon execution of the contract and the balance of the purchase price on July 11, 1972. He did not ask Bishop for a certificate of title when the contract was made, but did make such a request when he made the final payment on the mobile home. Mohr, according to a finding, "knew under Texas law title to a mobile home was indicated by a certificate of title".

Bishop was a retail mobile home dealer. It offered mobile homes for sale to the general public in the ordinary course of its business. Those facts were known to Apeco prior to its sale and delivery of the mobile home to Bishop.

The trial court, in its conclusions of law, as the same affect this appeal, concluded that the sale from Bishop to Mohr was not governed by Article 1436–1, V.A.P.C., but was governed by Sections 2.401 and 2.403 of the Texas Business and Commerce Code; that Mohr was a bona fide purchaser for value; that Apeco by delivering the mobile home to Bishop "cloaked" Bishop with apparent authority to sell it, and is estopped to assert that Bishop was not its duly authorized agent to sell the same; and that Mohr is entitled to "ownership, possession and title" to the mobile home.

All of the conclusions of law are attacked by appropriate points of error. The contention is made in the first and second points that the trial court erred in holding that the Certificate of Title Act did not apply but that the above mentioned Sections of the Texas Business and Commerce Code did apply. Apeco argues that the Certificate of Title Act "solely" applies to this case, and that Mohr "did none of the things necessary (under the Act) to obtain title", and that the sale was void under Section 53 because of noncompliance with Sections 22, 27 and 28 of the Act.

In order to dispose of the first question presented by this appeal, it is necessary to observe carefully the definition of certain terms as used in the Act, such as "first sale", "subsequent sale", "owner", "manufacturer's certificate" and "certificate of title".

Sales of vehicles are divided into two classes by the Act, the "first sale", and the "subsequent sale". The "first sale" is defined in Section 7 as being a sale of a vehicle which has not been previously registered in this State or elsewhere. The term "subsequent sale", under the definition contained in Section 8, means a sale after a vehicle which is required to be registered and licensed has been registered or licensed, or should, in law, have been registered or licensed.

An "owner", under the definition set out in Section 4, means any person other than a manufacturer, importer, distributor, dealer, or excepted governmental agency, who claims title to a vehicle after the "first sale", as defined in the Act, has been made.

The term "manufacturer's certificate" is defined in Section 22 as a certificate which shows the original transfer of a new vehicle from the manufacturer to the original purchaser, "whether importer, distributor, dealer, or owner". The term "certificate of title", as defined in Section 24, means a written instrument that is issued solely by and under the authority of the State Highway Department, which must give certain data relating to the vehicle, license plates, liens, and the purchaser and seller.

Section 27 of the Act requires the *owner* of a vehicle, before selling or disposing of any vehicle required to be registered, to make application to the designated agent of the State Highway Department for a certificate of title to the vehicle. Section 28 prohibits the issuance of a receipt by the designated agent of the State Highway Department for an application for a certificate of title to any *new* vehicle unless the applicant shall furnish a manufacturer's certificate properly assigned by the manufacturer, distributor or dealer shown thereon to be the last transferee to the applicant. Section 33 provides that title to a vehicle shall not pass or vest in the purchaser at a *subsequent sale* unless the owner designated in the certificate of title transfers the certificate of title on a form prescribed by the State Highway Department. Section 53 provides that title to a vehicle shall not pass until the provisions of the Act are complied with, and all sales made in violation of the Act shall be void.

Our Supreme Court, in Motor Inv. Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482, 486 (1943) said:

" . . . Reading the Act as a whole, we think it clear that every transfer of a motor vehicle, regardless of the number thereof, from manufacturer to dealer, dealer to dealer, and from dealer to 'owner,' as defined in the Act, constitutes a 'first sale,' and that it is not necessary that the vehicle be registered and a certificate of title thereto obtained as a condition precedent to the validity of such 'first sale.' "

█ Any sale of a vehicle prior to its registration is a "first sale", and any sale thereafter is a "subsequent sale". This distinction is material because of the requirement in the Act that an application for a certificate of title is essential to the validity of a "subsequent sale". A sale *to* an "owner" is a "first sale". A sale *by* an "owner" is a "subsequent" sale. Continental Credit Corporation v. Norman, 303 S. W.2d 449 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.).

█ "A sale *by* an owner without making application for a certificate of title before the sale is governed by the Certificate of Title Act and is void. Sections 27, 33. But a sale *to* an owner is governed by the rules governing ordinary sales of personal property". Continental Credit Corporation

v. Norman, supra (emphasis supplied). See also Nicewarner v. Alston, 228 S.W.2d 872 (Tex.Civ.App.—Amarillo 1950, writ ref'd n. r. e.).

■■ From the foregoing, we conclude that so long as the vehicle is a new, unregistered vehicle, there may be repeated transfers of the vehicle, such as from the manufacturer to dealer, from dealer to dealer, and from dealer to owner, without the need to register the vehicle or apply for a certificate of title. All such sales are "first sales". Under those circumstances, a manufacturer's certificate is the only document that evidences title. The manufacturer's certificate properly filled out is necessary only for the purposes of registering the vehicle and obtaining the initial certificate of title. After the vehicle is registered for the first time and the certificate of title is issued, title to the vehicle is then evidenced solely by the certificate of title, and all sales thereafter are "subsequent sales", and in order to be valid, must be in compliance with Sections 27, 33 and 51 of the Act.

■ The mobile home was a new, unregistered vehicle. The sale from Apeco to Bishop and the sale from Bishop to Mohr were clearly "first sales" within the definition of Section 7 of the Act. Mohr was the "owner" as that term is defined in Section 4. Bishop was a "dealer", not an "owner". Apeco was a "manufacturer", not an "owner". Neither Bishop nor Mohr were required under either of Sections 27, 28, 33, or 51 to secure a certificate of title or the manufacturer's certificate, as neither certificate is essential to the validity of a "first sale". Section 28 of the Act does require the presentment of a manufacturer's certificate, properly executed and filled out, showing each previous transfer of the vehicle as a condition precedent to the right to receive a certificate of title from the State Highway Department, but there is no provision in that Section, or elsewhere in the Act, to the effect that a "first sale" shall be invalid un-

less the manufacturer's certificate is transferred and delivered at the time the vehicle is purchased.

The case of Associates Discount Corp. v. Rattan Chevrolet, Inc., 462 S.W.2d 546 (Tex.Sup.1970) involved a conflict between Section 45 of the Certificate of Title Act and Section 9.307 of the Texas Business and Commerce Code. There, as here, it was contended that the Certificate of Title Act governed and that the Code was inapplicable. The Supreme Court disagreed, and pointed out that the purpose of the Uniform Commercial Code, as enacted in 1965 and as codified in the Texas Business and Commerce Code in 1967, was to codify and clarify the entire body of commercial transactions. It was held that the broad definitions of "goods" in Section 2.105 of the Code includes vehicles, and that Section 9.307 applies to the sale of a vehicle. It was further held that the Act and the Code, since they deal, at least in part, with the same subject matter, are in pari materia. The Court, in reiterating the rule announced in Motor Inv. Co. v. Knox City, supra, said: " . . . the transfer of the manufacturer's certificate is not essential to the validity of the sale."

■ Mohr was not required to request or demand a certificate of title or a manufacturer's certificate at the time of purchase of the mobile home in order for title to pass to him. Consequently, the consummation of the sale without demanding a manufacturer's certificate and without first applying for a certificate of title was not in violation of any provision of the Certificate of Title Act; Sections 22, 27, 28, 33 and 51 of the Certificate of Title Act do not apply to the instant case. We hold that the sale of the mobile home by Bishop to Mohr was not void and was not governed by the Certificate of Title Act, but was governed by the Texas Business and Commerce Code. Apeco's first and second points are overruled.

We now turn to Apeco's fifth, sixth and seventh points of error, wherein complaints

are made that the trial court erred in holding that Mohr was entitled to ownership and possession of and title to the mobile home, that Mohr was a bona fide purchaser for value, and that Apeco, by delivering the mobile home to Bishop, "cloaked" Bishop with apparent authority to sell the same and was estopped to assert that Bishop was not its agent. The thrust of Apeco's argument is that Mohr "could not be and was not an innocent purchaser for value" because he knew that a certificate of title was required and he failed to comply with the Certificate of Title Act.

■■ In Texas, a security interest in a vehicle may be perfected in two ways. If the vehicle is part of inventory, the security interest must be filed with the Secretary of State. Section 9.302 of the Texas Business and Commerce Code. In all other cases, the security interest must be noted on the certificate of title. Section 41 of the Certificate of Title Act. Here, Apeco did not perfect a lien under either statute. The perfection, however, of a secured interest will not always insure that such interest will be superior to the interest of a purchaser. A buyer in the ordinary course of business takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. Section 9.307(a) of the Code. To become a buyer in the ordinary course of business, one must be "a person, who in good faith and without knowledge that the sale to him is in violation of the ownership rights or secured interest of a third party in the goods buys in the ordinary course from a person in the business of selling goods of that kind. . . ." Section 1.201(9) of the Code. "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; . . ." Section 2.401 of the Code.

Subdivisions (a), (b) and (c) of § 2.403, Texas Business and Commerce Code, are of particular importance in disposing of this appeal. They provide:

"(a) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value . . .

(b) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(c) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

■ Section 45 of the Certificate of Title Act was repealed, effective May 10, 1971. In the event of a conflict between the Code and the Act, the Code will control. Section 65 of Article 1436–1, V.A.P.C. It is now definitely established that a mobile home is included in the definition of "goods" as set out in Section 2.105 of the Code, and that Section 9.307 of the Code applies to the sale of a mobile home (a vehicle) by a dealer to an owner. Associates Discount Corp. v. Rattan Chevrolet, Inc., supra.

■■ We believe that the trial court's conclusion of law that Mohr was a "bona fide purchaser for value" is equivalent to a conclusion that he was a "buyer in the ordinary course" within the meaning of Section 2.403(b) of the Code. We further believe that Mohr falls within the definition of a "buyer in ordinary course of business" as that term is defined in Section

1.201(9) of the Code. He was acting in good faith, and did not have any actual knowledge that the sale to him was in violation of any ownership rights of Apeco. There were no unusual circumstances surrounding the sale. Mohr paid a valuable consideration for the mobile home. Bishop was in the business of selling mobile homes, and Mohr bought the mobile home from Bishop for cash, and in the ordinary course of business. Since the sale was a "first sale" by a "dealer" to an "owner", and as it is settled that the transfer of the manufacturer's certificate was not essential to the validity of the sale, we do not believe that Mohr's failure to request a certificate of title at the time of the purchase prevented him from being in "good faith", as contended by Apeco. The Certificate of Title Act does not make the receipt of a manufacturer's certificate by a purchaser at a "first sale" a prerequisite to asserting that he is an innocent purchaser. Mills v. Clark, 257 S.W.2d 746 (Tex.Civ.App.—Dallas 1953, writ ref'd n.r.e.); Saylor Chevrolet Company v. Ellis, 336 S.W.2d 798 (Tex. Civ.App.—Eastland 1960, n.w.h.); Radcliff Finance Corporation v. Beckman, 296 S.W. 2d 942 (Tex.Civ.App.—Fort Worth 1956, n.w.h.); Gerber v. Pike, 249 S.W.2d 90 (Tex.Civ.App.—Texarkana 1952, n.w.h.).

Apparently, the fact situation of this case and the contentions made by the manufacturer and by the buyer have not heretofore been presented to an appellate court of this State for determination. The briefs do not cite such a Texas case, and we found none. But, the Florida case of Harmony Homes, Inc. v. Zeit, 260 So.2d 218 (Fla.App. 1st, 1972) is factually almost identical with this case. There, as here, the manufacturer of a new mobile home delivered the vehicle to a mobile home retail dealer; no documents indicating a transfer of title were delivered by the manufacturer to the dealer; the mobile home was sold for cash by the dealer to a buyer; the dealer failed to pay the manufacturer for the mobile home; and the manufacturer sued the buyer for possession of the mobile home. The manufacturer contended "that a purchaser of a

mobile home must obtain a certificate of title or a manufacturer's statement of origin at the time of purchase in order to become a bona fide purchaser as against a manufacturer who claims title and possession." The trial court concluded that the buyer was a bona fide purchaser for value and was entitled to rely upon the representations and apparent authority of the dealer to sell the mobile home. In affirming the trial court's judgment in favor of the buyer and against the manufacturer, the Florida Court of Appeals said:

" . . . It is settled law in this jurisdiction that the failure of the purchaser to obtain a certificate of title at the time of sale does not prevent the passage of title from the dealer to the buyer where the buyer has received possession for value without notice and in good faith.

. . .

\* \* \* \* \* \*

The present case can also be determined by applying the ancient principle that where one of two persons must suffer through the act or negligence of a third person, the one who created the circumstances which made the wrongful act possible must suffer the loss. Here, the appellant (manufacturer) is in the position of one who made possible the perpetration of the wrongful act and should rightly bear the loss. It would violate the principles of justice to inflict the appellees (buyer), who were good faith purchasers without notice of the transactions between appellant and Connolly (dealer), with such a burden."

Although the Florida statutes applicable to the obtaining of a certificate of title differ in some respects from those of Texas, we, nevertheless, believe the case lends strong support to our holding in the case at bar.

As between Apeco and Mohr, the former was in the best position to protect itself against any wrong perpetrated by Bishop. Apeco could have retained possession of the mobile home until it had been paid by Bishop, but instead it delivered the

mobile home to the sales lot of Bishop, where the latter could sell it in the ordinary course of business. Apeco permitted Bishop to take possession, knowing that Bishop would likely sell the vehicles before it was paid. The facts presented are sufficient to warrant the conclusions of law which were filed by the trial court. We, therefore, hold that Mohr was a buyer in the ordinary course of business; that Apeco clothed Bishop with the indicia of ownership regarding the mobile home; that Bishop was given the power (by Apeco) to transfer all of the rights of Apeco in the mobile home to a buyer such as Mohr; that Apeco is estopped to assert that Bishop was not invested with such power; and that the sale by Bishop to Mohr passed the title of the mobile home to Mohr. Accordingly, we further hold that Mohr is entitled to the possession and ownership of and title to the mobile home involved. Apeco's fifth, sixth and seventh points are overruled.

We have carefully considered all of Apeco's remaining points of error. They are also overruled.

The judgment of the trial court is affirmed.