**Albert ARNOLD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3-88-185-CV.**

Court of Appeals of Texas,
Austin.

July 11, 1990.

Gerald M. Brown, Temple, for appellant.

Murff F. Bledsoe, Asst. Dist. Atty., Belton, for appellee.

Before POWERS, GAMMAGE and JONES, JJ.

JONES, Justice.

A 1988 Ford Bronco, registered in the name of Albert Arnold, was forfeited to the State as having been used in the illegal delivery of a controlled substance by Arnold's brother-in-law, Jody Curry. *See* 1985 Tex.Gen.Laws, ch. 227, § 11, at 1123–24 [Tex.Rev.Civ.Stat. art. 4476–15, § 5.03(a), since repealed and codified in Tex.Code Cr.P.Ann. arts. 59.01–59.02 (Supp.1990)]. The State sought forfeiture on the theory that Curry was the car's true owner. The trial court agreed and ordered forfeiture. In an earlier unpublished opinion, we held there was no evidence to support the trial court's finding. Our decision was based, at least in part, on our conclusion that certain statements by Curry claiming ownership of the car were merely self-serving claims and therefore not probative of actual ownership. On further appeal, the Supreme Court held that any self-serving content of such statements was outweighed by their potential damage to Curry's own pecuniary and proprietary interest. *State v. Arnold,* 778 S.W.2d 68, 70 (Tex.1989). Holding the statements to be more than a scintilla of evidence of ownership in Curry, the Supreme Court remanded the cause to this Court "for consideration of the factual insufficiency points of error left unaddressed" by our earlier opinion. 778 S.W.2d at 70. In those points of error, Arnold challenges the sufficiency of the evidence to show (1) that Curry was the true owner of the Bronco, and (2) that the Bronco was used in the transportation, sale, receipt, possession, concealment, or delivery of a controlled substance. We will affirm the trial court's judgment.

In early 1988 Arnold, Curry, and Curry's sister, Leah, shared a house owned by Curry. Arnold and Curry had been acquainted since about 1979. Arnold knew that Curry was "heavy into drugs." In May 1987 Curry had been arrested for possession of cocaine. As a result of the prosecution growing out of that arrest, Curry's 1985 Ford Bronco was forfeited to the State in

October 1987. On January 9, 1988, Curry was again arrested for drug possession.

Arnold and Leah had begun dating in March 1987 and decided to marry in the spring of 1988. Curry needed cash and had been trying to sell his house. Arnold and Leah agreed to buy it. Arnold borrowed $60,000 from a local bank and closed the house purchase on the morning of March 16, 1988. With a portion of the proceeds from the sale, Curry immediately obtained a cashier's check, payable to himself, in the amount of $21,602.80. Arnold and Curry then went directly to a Ford dealership, where Arnold had already paid $500 to hold a 1988 Ford Bronco. Curry indorsed the check to the dealership as the balance on the purchase of the 1988 Bronco. Title to the Bronco was taken in Arnold's name. At the time of the purchase, four vehicles belonging to Arnold and Leah were kept at the house; Curry owned no car. That same evening, March 16, 1988, Arnold and Leah were married.

Twenty-seven days later, on April 12, while driving the Bronco, Curry was arrested by Officer Dorsey of the Temple Police Department for driving while his license was suspended. With Curry was a friend, Dede Remington. An inventory search of the Bronco revealed small amounts of methamphetamine and marihuana, along with two syringes, a spoon, and a plastic bag containing the odor of methamphetamine. No criminal charges were brought against Curry or Remington for drug possession, but the State instituted this forfeiture action.

■ In point of error three, Arnold asserts that the evidence was factually insufficient to support the trial court's finding that Curry was the true owner of the Bronco. With the Supreme Court's holding herein that the evidence of Curry's ownership is not legally insufficient, any presumption of Arnold's sole ownership created by the certificate of title vanished. *Minter v. Joplin*, 535 S.W.2d 737 (Tex.Civ. App.1976, no writ). Thus, we are left merely to weigh and consider all the evidence and determine whether the trial court's conclusion that Curry was the true

owner is "so against the great weight and preponderance of the evidence as to be manifestly unjust." *In re King's Estate*, 244 S.W.2d 660, 661 (Tex.1951); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) ("so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust").

■ Only Arnold testified for the defense. He testified that Curry gave the Bronco to him as a wedding present: "[H]e wanted to do something for me because I had helped him and he thought it would be a nice wedding gift." On the other side is the following evidence:

(1) Arnold contributed only $500 toward the purchase price of the car; the rest, more than $21,600, came from Curry at a time when Curry "needed cash"; Curry and Arnold went to the car dealership together, cashier's check in hand, and Curry gave the check to the dealer;

(2) At the time of the alleged gift, Curry did not own any car, while Arnold and his new wife owned four cars;

(3) Curry had previously had a 1985 Bronco seized and forfeited under the Controlled Substances Act; Arnold was aware of that seizure;

(4) Curry, Arnold, and Leah all lived together, both before and after the purchase; Arnold knew Curry was "heavy into drugs";

(5) One of Curry's friends, Wes Tyson, testified that Curry told him the Bronco was his, but was registered in Arnold's name "because he didn't want the police to get it like his other Bronco";

(6) Another friend of Curry's, Irene Dehollloz, testified that Curry told her the Bronco was his;

(7) A third friend of Curry's, Dede Remington, testified that before the purchase Curry had taken her to see the Bronco while it was still at the dealership, stating that "he was going to buy it" as soon as he got the money;

(8) The arresting officer testified that after the Bronco was seized, Curry stated that he owned it;

(9) Curry had a set of keys to the Bronco; in the twenty-seven days between its purchase and seizure, Curry drove it 90% of the time and kept some of his personal documents in it.

■ In its opinion reversing our earlier judgment, the Supreme Court made it clear that Curry's statements to others regarding his ownership of the Bronco carried substantial weight:

If Curry was the true owner, his assertions to that effect were contrary to his pecuniary interest. They tended to expose him to the possibility of losing a new, expensive vehicle. The same statements subjected him to civil liability under the forfeiture provisions of the Controlled Substances Act, Tex.Rev.Civ.Stat. Ann. art. 4476–15 (Vernon Supp.1989). *Curry would not make statements so contrary to his interest unless they were true.*

778 S.W.2d at 69–70 (emphasis added). Arnold's testimony that the Bronco belonged to him was not conclusive on the issue, and the trial court, as fact-finder, was entitled to disbelieve all or any part of it. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986); *Garcia v. Dependable Shell Core Machines, Inc.*, 783 S.W.2d 246, 248 (Tex.App.1989, no writ).

From the evidence in this record, it is entirely reasonable to infer that the parties intended and agreed that Curry would be the sole "equitable" or "beneficial" owner of the Bronco. Accordingly, we hold that the foregoing evidence and the reasonable inferences that may be drawn therefrom are more than enough to uphold the trial court's finding of Curry's ownership against a factual sufficiency challenge.

■ However, we conclude that it is not necessary even to go that far. It is at least equally reasonable to infer that *both* Arnold and Curry were to have an ownership interest in the car. After all, the evidence indicates that Arnold did contribute $500 to the purchase price. In order for forfeiture to be upheld, it is not necessary that Curry be shown to be the *sole* owner; it is sufficient that he be *an* owner. Indeed, the

current version of the forfeiture statute expressly defines "owner" to mean "a person who claims *an equitable or legal ownership interest* in property." Tex.Code Cr. P.Ann. art. 59.01(5) (Supp.1990) (emphasis added). Although not expressly defined in the now-repealed version under which this suit was tried, logic compels the conclusion that the term "owner" cannot be construed to require sole ownership. A contrary interpretation would undercut the statute's purpose and create a loophole big enough to drive a Ford Bronco through.

■ In this connection, we note that the trial court's forfeiture order expressly found that Arnold owned no interest whatsoever in the Bronco and that Curry was "the owner." As pointed out by the dissent, the general rule is that "if the case is tried before the court without a jury, and the court makes express findings of fact on which he bases his judgment, a reviewing court will not consider other controverted fact issues not considered by the trial court to uphold such judgment." *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939). In the unique circumstances of the present case, however, where the trial court expressly found Curry to be *the* owner of the Bronco, we would, if such were necessary to our decision, have no difficulty indulging the presumption that the trial court also impliedly found Curry to be *an* owner. Point of error three is overruled.

■ In point of error two, Arnold asserts that the evidence was factually insufficient to satisfy the requirements of the now-repealed version of article 4476–15, § 5.03(a):

The following are subject to forfeiture as authorized by this subchapter:

\*　　\*　　\*　　\*　　\*　　\*

(5) any conveyance, including ... vehicles, ... that is used or intended for use to transport or in any manner facilitate the transportation, sale, receipt, possession, concealment, or delivery of [a controlled substance], provided that no conveyance used by any other person shall be forfeited under this subchapter

unless the owner or other person in charge of the conveyance is a consenting party or privy to an offense under this Act that is punishable as a felony....

1985 Tex.Gen.Laws, ch. 227, § 11, at 1123–24. The Texas Supreme Court has interpreted the predecessor of this statute to permit forfeiture only when "the offense is one involving some aspect of a drug transaction," rather than mere possession by an occupant. *See One 1980 Pontiac v. State,* 707 S.W.2d 881, 883 (Tex.1986).

In the present case, Dede Remington testified that she had known Curry for a "long time," and that they had "done drugs" together over a period of about six months. On April 12, 1988, she drove from the Austin area to Temple, carrying with her a plastic bag containing methamphetamine. At some point in the day, she contacted Curry, and they agreed to meet at a local bar, known as Gregory's, to visit. During the course of their conversation at the bar, they decided to go to Wes Tyson's house so Tyson and Curry could use some of her methamphetamine. Remington testified as follows:

Q: Dede, Jody Curry knew why you left Gregory's and went to Wes Tyson's, didn't he?

A: Yes, sir.

Q: Y'all had agreed to go do some dope?

A: Yes, sir.

Q: And he knew that you had the dope?

A: Yes, sir.

Q: And when you got to Wes Tyson's you gave him the dope?

A: Yes, sir.

She later testified that when she and Curry left Tyson's house she had no remaining methamphetamine because "Wes bought the last of it." From the foregoing a reasonable inference may be drawn that the purpose of the trip from the bar to Tyson's house was, at least in part, to deliver to Tyson some or all of the methamphetamine in Remington's possession. We conclude that a finding that the Bronco was used to facilitate a "drug transaction" is not so against the great weight and preponder-ance of the evidence as to be manifestly unjust. Point of error two is overruled.

The judgment of the trial court is affirmed.

POWERS, Justice, dissenting.

I dissent for the following reasons:

The judgment below rests on four explicit findings: (1) Curry used the 1988 Bronco to transport, conceal, and deliver a controlled substance; (2) "Arnold owns *no* interest in the vehicle"; (3) Arnold was only a "fictitious registered owner and not the real owner *in fact*"; (4) "the owner of the Bronco was, *in fact,* defendant Jody Wayne Curry." (Emphasis added.) The last three findings are material to my dissent.

## THE MAJORITY'S THEORY OF JOINT OWNERSHIP

The following are undisputed in the evidence:

(1) Arnold alone contracted with the dealer to buy the Bronco on terms set out in a contract signed by Arnold and the dealer's salesman, describing the particular Bronco involved in this litigation.

(2) The dealer delivered the Bronco to Arnold and assigned title to him alone.

(3) The State issued its certificate of title designating Arnold the owner, on the dealer's assignment of title to him, pursuant to the Certificate of Title Act, Tex.Rev.Civ. Stat.Ann. art. 6687–1 (1977 & Supp.1990).

(4) Curry paid the purchase price of $21,602.80.

(5) The Bronco was a new automobile.

Pursuant to a previous holding by the Supreme Court of Texas, in the present case, I assume that the evidence is conflicting on the point of whether Curry intended to acquire title to the Bronco, by reason of his payment, or whether he intended to pay the purchase price as a wedding gift to Arnold. Curry did not testify. Third-party witnesses testified that Curry *told them* at various times that he was the owner of the Bronco, and the Supreme Court held that their hearsay statements were some evi-

dence that Curry intended to acquire title to the car by his payment. Arnold testified that Curry told him that he intended the payment to be a wedding gift.

To accommodate the uncontradicted evidence that Arnold *alone* contracted with the dealer for purchase of the Bronco and received from the dealer an assignment of title *under the Certificate of Title Act,*[1] the majority infer "[f]rom the evidence in this record" a theory of *joint* ownership under which Arnold and Curry were each an "owner" of the Bronco. It might be, the majority reason, "that the parties intended and agreed that Curry would be the 'equitable' or 'beneficial' owner." But "it is not necessary even to go that far," says the majority, because "[i]t is at least equally reasonable to infer that *both* Arnold and Curry were to have an ownership interest in the car" based upon Arnold's paying $500.00 in connection with the purchase of the Bronco. On this theory of joint ownership, the majority conclude that the evidence is factually sufficient.

Such a course of rationalizing the evidence is absolutely prohibited to an appellate court. Because the trial court based its judgment on the explicit fact findings enumerated above, it is elementary that we may not affirm that judgment on *other* controverted factual grounds that *we* might imagine and deduce from the evidence in support of the judgment. In *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939), the Supreme Court stated:

> if the case is tried before the court without a jury, and the court makes express findings of fact on which he bases his judgment, a reviewing court will not consider other controverted fact issues not

considered by the trial court to uphold such judgment.

We must instead evaluate the factual sufficiency of the evidence in terms of the trial court's explicit findings that Arnold *in fact* owned "no interest in the vehicle," while Curry was *the* owner *in fact.* That is to say, we may not reason, as the majority do, that Arnold *did* in fact own an interest in the Bronco along with his co-owner Curry. By reasoning on that basis, the majority violate the fundamental rule of appellate review stated above—a rule designed to preserve the trial court's exclusive power to find the facts from controverted evidence, and to choose the factual grounds for its judgment.

Consequently, I dissent from the majority's judgment and opinion. I will therefore evaluate the factual sufficiency of the evidence in reference to the trial-court findings mentioned previously as well as the uncontroverted evidence.

### FACTUAL SUFFICIENCY OF THE EVIDENCE

It is not enough if the evidence supports only a conclusion that Curry *did*, in fact, own the Bronco; the evidence must establish as well that Arnold did *not*, in fact, own an interest in the car. The Supreme Court, in its decision reversing our previous judgment, spoke only to the former, holding that Curry's out-of-court statements to others, who testified in the case, amounted to some evidence of actual title in him, as opposed to being merely evidence of his *claim* to title. I will assume that to be the case, and evaluate Curry's hearsay statements together with the other evidence to ascertain whether all the evidence is factually insufficient to support a finding of vital fact, or whether the finding of a

---

1. The forfeiture proceeding was brought, tried, and adjudicated in the trial court in 1988, that is to say, under the forfeiture provisions contained in the Texas Controlled Substances Act §§ 5.03—5.07 as amended in 1985 in certain respects not material here. The forfeiture provisions of that Act were obviously designed to operate in conjunction with the provisions of the Certificate of Title Act, Tex.Rev.Civ.Stat.Ann. art. 6687-1 (1977 & Supp.1990), in cases where the property to be forfeited was a motor vehicle.

*See, e.g.,* § 5.05(c), (d), and § 5.08(c) of the Texas Controlled Substances Act.

The forfeiture sections of the Texas Controlled Substances Act were repealed in 1989 and are now found, in somewhat altered form, in Tex.Code Cr.P.Ann. art. 59.01—59.10 (Supp. 1990). The new provisions continue to operate *in pari materia* with the Certificate of Title Act and its concepts of ownership or "title." *See, e.g.,* art. 59.02(c), (d).

vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Calvert, *"No Evidence" and "Insufficient Evidence Points of Error,"* 38 Texas L.Rev. 361, 366 (1960). The vital facts in question are the trial court's explicit findings that Arnold in fact owned no interest in the Bronco, that he was a "fictitious registered owner" of the car, and that the owner in fact was Curry.

I should first mention two basic propositions of law. Firstly, the Certificate of Title Act contemplates and provides for two circumstances in which the ownership interest in an automobile may be transferred: (1) the "first sale" of a new car by a dealer to the first "owner"; and (2) a "subsequent sale" of a used car by one "owner" to a subsequent "owner." Certificates of title are issued initially to the first "owner" and assigned thereafter to subsequent owners as provided in the Act. *See generally Apeco Corp. v. Bishop Mobile Homes, Inc.,* 506 S.W.2d 711 (Tex.Civ.App.1974, writ ref'd n.r.e.).

Secondly, one must distinguish between cases where the title evidenced by a certificate is a collateral issue and those cases where title is directly in issue between competing claimants, as in the present case.

Where the title evidenced by a certificate is a *collateral* issue, a litigant might show by almost any kind of evidence that ownership in fact rests in a person other than the person named as the owner in the certificate. *Pritchett v. Highway Ins. Underwriters,* 158 Tex. 116, 309 S.W.2d 46 (1958) (plaintiff-insured would have been entitled to show that he owned truck covered by policy where certificate of title was issued to another, except that he judicially admitted that designated owner was alter ego of person other than himself); *Pioneer Mut. Compensation Co. v. Diaz,* 142 Tex. 184, 177 S.W.2d 202 (1944) (plaintiff-insured entitled in suit on his policy to show that he owned truck to which policy applied even though certificate of title named another as owner); *Empire Gas & Fuel Co. v. Muegge,* 135 Tex. 520, 143 S.W.2d 763 (1940) (defendant in suit for personal injuries, based on alleged respondeat-superior

relationship to driver of truck, may show that he in fact did not own the truck even though designated as owner in certificate of title); *Minter v. Joplin,* 535 S.W.2d 737 (Tex.Civ.App.1976, no writ) (father might show, to avoid vicarious liability for injuries caused by son's negligence, that son in fact owned motor vehicle registered in father's name). When evidence is introduced in such cases to vary the fact of ownership from that stated in the certificate of title, it is said that the presumption that attends the certificate "vanishes." This means only that the issue of ownership may go to the trier of fact; it does not mean that the certificate, as evidence of ownership, "vanishes" from the corpus of the evidence adduced in the case. Only the presumption "vanishes."

Where the title evidenced by the certificate is put *directly* in issue by competing claimants to that title, the certificate and the resulting presumption may have a quite different consequence owing to the controlling terms of the Certificate of Title Act. The basic rule is this: "Titles to vehicles ... do not rest in parol, but upon the title documents." *First State Bank v. Austin,* 315 S.W.2d 390, 392 (Tex.Civ.App.1958, writ ref'd). Where title is acquired from the dealer or manufacturer in a first sale, no certificate of title is necessary. The validity of sales and other transfers of title between the parties are governed by the ordinary rules of law applicable to the sale of personalty. *Apeco Corp.,* 506 S.W.2d at 708–15. However, title may not be transferred in any subsequent sale except on compliance with the Act.

Concerning subsequent sales, § 33 of the Act provides: (1) the owner of a motor vehicle may not dispose of it "at a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title ... on a form prescribed by the Department before a Notary Public"; and (2) "[n]o title to any motor vehicle shall pass or vest until the transfer is so executed." Section 51 of the Act declares: "All sales made in violation of this Act shall be void [not merely voidable, which is the State's theory in the present case] and no title shall pass until the provisions of

this Act have been complied with." Unless the owner designated in the certificate complies with § 33, by executing the required form transferring title, title simply does not pass to anyone, that result being essential to effectuate the terms of §§ 33 and 51, and the Act generally, however harsh the result. *Drake Ins. Co. v. King,* 606 S.W.2d 812, 816–17 (Tex.1980); *Guinn v. Lokey,* 151 Tex. 260, 249 S.W.2d 185, 188–89 (1952).

The trial court found expressly that Curry was the exclusive owner of the Bronco and that Arnold was a mere "fictitious" owner with no interest in the car. From whom and how did Curry acquire his ownership? There are only two possibilities under the evidence. Curry must have acquired his title (1) from the dealer in a *first sale* or (2) from Arnold in a *subsequent sale.* I will discuss the sufficiency of the evidence and the trial-court findings in terms of both possibilities.

*First Sale.* Under the first-sale provisions of the Act, one may show his real interest in a motor vehicle under the ordinary rules of law pertaining to the sale and purchase of personal property. One might imagine in the present case that Curry and Arnold agreed that Arnold would take from the dealer a "fictitious" title to the Bronco, but that Curry would own the Bronco for all other purposes. There is no direct evidence of such an agreement, and it assumes that Arnold's legal title and Curry's actual ownership both originate in a criminal act. *See* Tex.Rev.Civ.Stat.Ann. art. 6687–1, §§ 59, 61 & 62. Leaving aside that impediment to such a possibility, I will assume the trial court made an implied finding that such an agreement was made between Curry and Arnold, permitting the former to acquire actual and exclusive ownership of the Bronco. I will also assume that the evidence recited in the majority opinion is sufficient to show that Curry at least assented to such an agreement. These assumptions are, of course, sustained only by a series of inferences, but they are essential to imagine an evidentiary basis that will support the judgment below.

Assuming the evidence to be sufficient to show *Curry's* assent to the supposed agreement, where is the evidence showing that *Arnold* also assented to the agreement? There is none. Where the evidence shows only the assent of one party to an agreement, it does not even raise a fact issue as to whether an agreement was made and a recovery may not rest on such an agreement. *Dunn v. Price,* 87 Tex. 318, 28 S.W. 681 (1894); *Kelly v. Short,* 75 S.W. 877 (Tex.Civ.App.1903, writ ref'd). The matter was controverted, for Arnold vigorously denied in his testimony the making of such an agreement. Even under the series of inferences assumed above, the evidence is insufficient to sustain the judgment below on an implied finding that Curry acquired his title under an agreement with Curry and in a first sale of the Bronco from the dealer.

*Subsequent Sale.* May it be supposed that Curry acquired his actual and exclusive ownership from Arnold in a subsequent sale wherein Arnold divested himself of all the title he had acquired from the dealer by transferring exclusive ownership to Curry? This is the sole remaining possibility by which the judgment might be sustained on the express findings made by the court below.

The ordinary rules of law applicable to the sale of personalty are modified by the terms of the Act in the case of all subsequent sales of motor vehicles after the first sale by the dealer. As pointed out above, a supposed sale from Arnold to Curry would be governed by the subsequent-sale provisions of the Act insofar as they modified the ordinary rules of law.

If one assumes that Curry acquired his exclusive title from Arnold, and that the evidence is sufficient to show such a sale (the evidence does not even imply such a sale), the corpus of the evidence omits entirely to show that the sale complied with the requirements of § 33 of the Act. The evidence omits to show that Arnold assigned his title, acquired from the dealer, on the prescribed form and before a notary public. Absent a showing of that fact, Curry could acquire no title from Arnold

because § 33 provides explicitly that "[n]o title ... shall pass or vest" in any subsequent sale without compliance with that section of the Act. *Drake Ins. Co.*, 606 S.W.2d at 816–17; *Guinn*, 249 S.W.2d at 188–89.

In summary, if one assumes that Curry's out-of-court statements to others may be some evidence of his ownership of the Bronco, they do not permit the trial-court findings because nothing in the remaining evidence supplies any *additional* evidentiary factor by which Curry could have acquired ownership under law: (1) Arnold's assent to an agreement under which Curry could acquire ownership from the dealer in a first sale; or (2) Arnold's compliance with § 33 of the Act in a subsequent sale to Curry. I would therefore hold the evidence factually insufficient, reverse the judgment below, and remand the cause to the trial court for a new trial.