**2004 VOLKSWAGEN JETTA,**
Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 05–08–00416–CV.**

Court of Appeals of Texas,
Dallas.

Feb. 27, 2009.

---

Thomas G. Pappas, Burleson Pate & Gibson, LLP, Dallas, TX, for Appellant.

Lisa Milasky, Asst. District Atty., McKinney, TX, for Appellee.

Before Justices BRIDGES, RICHTER, and MAZZANT.

## OPINION

Opinion by Justice BRIDGES.

Scott Jamison and Lori Jamison appeal the trial court's judgment ordering the forfeiture of a 2004 Volkswagen Jetta. In a single issue, Lori and Scott challenge the trial court's conclusions of law supporting the forfeiture. We affirm the trial court's judgment.

On May 30, 2007, Frisco police officer Jay Reim was monitoring a "controlled buy" between a confidential informant and Corey West. The prearranged transaction was to take place in a shopping center parking lot in Frisco. Reim watched West get out of a Volkswagen Jetta and get into the informant's vehicle. The informant paid West $200, and West gave the informant Xanax and methamphetamine. West got back in the Jetta and left. Reim told other officers about the Jetta and followed the informant to a location where he recovered the drugs purchased from West.

Frisco police officer David Robinson testified he was assisting the narcotics officers who gave Robinson a description of a 2004 Volkswagen Jetta, and Robinson saw the Jetta leave the parking lot. Robinson stopped the Jetta and identified the driver as Scott Jamison. Three passengers were

also in the Jetta: Corey West was in the front seat, and Edgar Sotelo and Ashley DeWeese were in the back seat. Upon making contact with Scott, Robinson "immediately detected the strong odor of freshly burnt marijuana." West, the "target of the buy bust," was arrested immediately, and the other occupants of the car were detained while Robinson searched the Jetta. In the glove box was a bag containing marijuana and some Xanax pills, marijuana seeds and stems were found "throughout the vehicle," and there was a "partially smoked marijuana blunt cigar" in the cup holder in the back seat. In the Jetta's trunk Robinson found equipment he recognized as items used to grow marijuana. All of the occupants of the Jetta admitted smoking marijuana. Scott admitted he knew the items in the trunk were used to grow marijuana and said he was "transporting them for his friend." Jamison, Sotelo, and DeWeese were arrested, and the Jetta was held for possible seizure.

Reim interviewed Scott at the police station after advising Scott of his rights. Scott said he had just returned from Florida and contacted West. Scott knew West sold "drugs" but did not indicate what kind. Scott knew West was going to sell drugs to another person on the day of the arrest. Scott said the Jetta he was driving to the drug transaction was "paid for" and he was the primary driver. Reim made the decision to "do the seizure" of the Jetta after it became clear a felony drug transaction had occurred and Scott drove West to the transaction in the Jetta. Reim submitted a case to the Collin County grand jury against Scott for aiding and abetting West, but the case was no-billed.

Lori Jamison testified she is Scott Jamison's mother, and the Jetta was registered in her name. Lori purchased the Jetta so Scott could get to his job and take himself and his sister to school, and Scott's father paid off the loan. Scott used a credit card in Lori's name to buy gas for the Jetta. Five or six months prior to his arrest, Lori became aware Scott was having "behavioral issues" and might "be involved with marijuana." Lori and Scott's father pursued counseling for Scott and had Scott tested for drugs. Lori testified she thought Scott "was no longer involved in any kind of marijuana activity," and she would not have allowed him to use the Jetta if she had known he was using marijuana. On cross-examination, Lori testified the Jetta was Scott's "primary car" and, because the Jetta was a stick shift, Lori preferred to drive her Volvo. Scott drove the Jetta to Florida when he went to live with his father before he drove back to Texas shortly before his arrest.

The trial court ruled that the Jetta was contraband, Lori had given at least implied consent for the use of the Jetta, and Scott was aware that a drug deal was happening and drove West to a location for the purpose of conducting a drug transaction. Therefore, the trial court ordered the Jetta to be forfeited. This appeal followed.

In a single issue, Lori and Scott challenge ten of the trial court's "conclusions of law."[1] Specifically, they challenge the court's findings of fact and conclusions that (1) Scott knew West sold drugs and agreed to drive West to a designated location to sell drugs, thereby making Scott a party to the commission of a felony drug offense and subjecting his vehicle to forfeiture; (2) although the delivery of a controlled sub-

---

1. Although Lori and Scott challenge what the trial court labeled "conclusions," they include several matters better described as findings of fact. Accordingly, we will address the challenged matters under the standard of review for both findings of fact and conclusions of law.

stance charge against Scott was no-billed, an underlying felony conviction is not required to proceed with forfeiture; (3) Lori was the registered owner of the Jetta, which was purchased solely for Scott's use; (4) Scott was the primary user and equitable owner of the Jetta; (5) requiring proof of Scott's sole ownership of the Jetta would defeat the purpose of the forfeiture statute; (6) Lori would not be unfairly penalized by forfeiture of the Jetta; (7) Lori failed to meet her burden of proof as an "innocent owner" because she failed to convince the court of her lack of knowledge of Scott's involvement in illegal drugs; and (8) Lori's implied consent to Scott's use of the Jetta to transport illegal drugs and to aid and abet West in the commission of a felony drug offense was sufficient to support forfeiture.

■ We review the evidence to support the trial court's findings of fact by the same standards we use to review the evidence to support jury findings, that is, by applying the legal and factual sufficiency tests. *$18,800 in U.S. Currency v. State,* 961 S.W.2d 257, 261 (Tex.App.-Houston [1st Dist.] 1997, no writ). When an appellant argues there is "no evidence" to support an adverse finding to an issue on which he did not have the burden of proof, we consider only the evidence and inferences tending to support the trial court's judgment and disregard all evidence and inferences to the contrary. *Id.*

■ We review the trial court's conclusions of law as a legal question. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). The appellant may not challenge a trial court's conclusions of law for factual sufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id.* If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *Id.*

■ Under chapter 59 of the Texas Code of Criminal Procedure, property that is contraband is subject to seizure and forfeiture. TEX.CODE CRIM. PROC. ANN. art. 59.02(a) (Vernon 2006). "Contraband" means property of any nature used or intended to be used in the commission of certain felonies, including felonies under chapter 481 of the Texas Health and Safety Code (Texas Controlled Substances Act). TEX.CODE CRIM. PROC. ANN. art. 59.01(2)(B)(i) (Vernon Supp.2008). The statute places on the State the burden of proving, by a preponderance of the evidence, that the item being forfeited is subject to forfeiture. *$43,774.00 in U.S. Currency v. State,* 266 S.W.3d 178, 182 (Tex. App.-Texarkana 2008, no pet.).

■ In his brief, although Scott begins his argument by setting forth the trial court's findings of fact and conclusions of law he contends are erroneous, his discussion of the issues raises three arguments. First, Scott points out he was not indicted for the underlying felony. Article 59.05 of the code of criminal procedure provides that an owner or interest holder may present evidence of a dismissal or acquittal of an underlying offense in a forfeiture proceeding, and evidence of an acquittal raises a presumption that the property that is the subject of the hearing is nonforfeitable. TEX.CODE CRIM. PROC. ANN. art. 59.05(d) (Vernon 2006). This presumption can be rebutted by evidence the owner or interest holder should have known that the property was contraband. TEX.CODE CRIM. PROC. ANN. art. 59.05(d) (Vernon 2006). A final conviction for an underlying offense is not a requirement for forfeiture under chapter 59. TEX.CODE CRIM. PROC. ANN. art. 59.05(d) (Vernon 2006). Scott argues the presump-

tion that the Jetta was nonforfeitable was raised by evidence that the grand jury no-billed him on the underlying offense. A no-bill is not an acquittal. Because we conclude there is no evidence appellant was *acquitted* of the underlying offense, we conclude the 59.05(d) presumption does not apply.

■ Second, Scott argues the trial court erred in concluding he was the Jetta's "owner." Under the forfeiture statute, an "owner" means a person who claims an equitable or legal ownership interest in property. TEX.CODE CRIM. PROC. ANN. art. 59.01(6) (Vernon Supp.2008). Lori testified the title to the Jetta was in her name "because I live here and I was in charge of Scott and monitoring the use of the car here in Texas." The Jetta was purchased because Lori "needed some way to get Scott to school and for his sister to go to school" and the car was needed for Scott "to have a way to get to his job." Lori testified the Jetta was Scott's "primary car," and Scott said the Jetta was "paid for" and he was the primary driver. Scott took the car when he moved to Florida. In order for forfeiture to be upheld, it is not necessary that Scott be shown to be the sole owner; it is sufficient that he be *an* owner. *See Arnold v. State,* 793 S.W.2d 305, 308 (Tex.App.-Austin 1990, no writ).

In *Arnold,* a Ford Bronco registered in the name of Albert Arnold, was forfeited to the State as having been used in the illegal delivery of a controlled substance by Arnold's brother-in-law, Jody Curry. *Id.* at 306. The evidence showed Curry was "heavy into drugs" and had previously had a vehicle forfeited to the State. *Id.* at 306. Curry told a friend the Bronco belonged to him but was registered in Arnold's name "because he didn't want the police to get it like his other Bronco." *Id.* at 307. Curry told another friend the Bronco was his and took a third friend to the dealership,

showed her the Bronco, and said he was going to buy it. *Id.* at 307. The arresting officer testified that, after the Bronco was seized, Curry stated that he owned it. *Id.* at 307. Curry had a set of keys to the Bronco, drove it ninety percent of the time during the twenty-seven days between its purchase and its seizure, and kept personal documents in it. *Id.* at 308. The State sought and obtained forfeiture on the theory that Curry was the car's true owner. *Id.* at 306. The court in *Arnold* concluded it was reasonable to infer that *both* Arnold and Curry were to have an ownership interest in the car and that they agreed Curry would be the sole "equitable" or "beneficial" owner. *Id.* at 308.

Although the facts differ in this case and in *Arnold,* common to both cases is the fact that the automobile was titled in one party's name but used primarily by another—in both cases, a family member. We conclude, as did the court in *Arnold,* that Scott's use of the Jetta as primary driver, claim that he owned the car, and use of the car a majority of the time in Texas and exclusively while in Florida established he was the "equitable" or "beneficial" owner. *See id.* Under these circumstances, the trial court did not err in concluding Scott was the "owner" of the Jetta. *See id.*

Third, Scott argues the trial court erred in concluding Lori was not an innocent owner. We have concluded the trial court did not err in concluding Scott was the equitable owner of the Jetta. Thus, whether or not Lori was also an owner is not relevant. We overrule Lori and Scott's sole issue.

We affirm the trial court's judgment.